# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRUCO LIFE INSURANCE COMPANY, an Arizona Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA ENERGY DEVELOPMENT, INC., a dissolved California Corporation, TIMOTHY BRYSON, an individual, MICKEY NICHOLSON, an individual, JOHN J. WALSH, an individual, EDWARD SPOONER, trustee of the LIVING TRUST OF EDWARD SPOONER, LIFE ADVANCE, LLC, a Nevada corporation, DOES 1-10,,<br><br>Defendants. | Case No.: 18cv2280 DMS (AHG)<br><br>**ORDER (1) DENYING LIFE ADVANCE, LLC'S MOTIONS FOR SUMMARY JUDGMENT AND (2) GRANTING IN PART AND DENYING IN PART LIFE ADVANCE LLC'S MOTIONS FOR FINDINGS OF FACT** |
| AND ALL RELATED CROSS CLAIMS AND THIRD PARTY CLAIMS. | |

At issue are proceeds from a life insurance policy ("Policy") that have been deposited into the registry of the Court by Plaintiff Pruco Life Insurance Company ("Pruco") through the present action for interpleader. In early 2016, James Roberts was

1

terminally ill and battling "Stage 4 cancer of the throat and lymph glands[.]" (Decl. of Timothy Bryson in Supp. of Opp'n to Mot. ("Bryson Decl."), 4/25/16 Memorandum from Timothy Bryson to Bob Mansueto.) At that time, Roberts was the President and CEO of a solar company, California Energy Development, Inc. ("Company"), which was controlled by a small handful of officers and directors and a few "equity stake holders." Corporate formalities were not followed and struggles over control of the Company were common. In the short life of the Company, *six* lawsuits were filed in state and federal courts, including the present one. When the Company was purportedly dissolved ten months after it was formed, it had one significant asset, the $1 million "key-man" Policy issued by Pruco on the life of Roberts. Defendant Mickey Nicholson contends he initiated the process of obtaining the Policy by contacting a broker in November 2015, and ensured the Company was designated as owner and sole beneficiary of the Policy. But shortly after the Policy issued in January 2016, Roberts purported to change ownership of the Policy from the Company to himself and substitute his wife and children as beneficiaries in place of the Company. Roberts acted fraudulently and had no authority to make those changes, according to Nicholson and Timothy Bryson, an officer of the Company.

Amidst the turmoil, Roberts sold his interest in the Policy to a viatical settlement company, Defendant Life Advance, LLC, for approximately $110,000—purportedly making Life Advance the owner and sole beneficiary of the Policy. The sale was hotly contested by Nicholson and Bryson; Roberts did not have long to live, and in fact took his own life in April 2019, about one year after he sold his interests in the Policy.[1]

---

[1] The Policy provides that "[i]f the Insured … dies by suicide within two years from the issue date, this contract will end and [Pruco] will return the premium paid … [with] no further benefit." (Decl. of Russell M. DePhillips in Supp. of Mot. ("DePhillips Decl."), Ex A at 20 (Policy Suicide Exclusion)). Roberts' suicide occurred outside the two year period. The Policy further provides Pruco "will not contest the contract after it has been in force during the Insured's lifetime for two years from the issue date." (*Id.* at 21 (Policy Incontestability Provision)). While the Application states the Insured has never been

This case now comes before the Court on Life Advance's motions for summary judgment or, in the alternative, findings of fact without substantial controversy, on its cross-claims against Nicholson and its third-party claims against Jason Voelker, who claims an equity ownership interest in the Company by virtue of an assignment of rights from Nicholson.  Life Advance claims it has a "clear chain of ownership" from the Company to Roberts and eventually to itself, and therefore it is the owner of the Policy and sole beneficiary of the Policy proceeds.  It also claims the Company entered into a settlement in 2017 in one of the five other related lawsuits and relinquished all claims to the Policy.  Nicholson and Voelker, proceeding *pro se,* claim Roberts lacked authority to change ownership of the Policy, and the settlement in the related case did not relinquish the Company's claims to the Policy because the settlement agreement was not signed by a representative of the Company.  Since Nicholson and Voelker claim they are the "equity stake holders" in the Company, they claim entitlement to the Policy proceeds as they stand in the shoes of the Company.

The machinations of the parties have created a Gordian Knot that even a trier of fact will have difficulty untying, and certainly it is one that cannot be undone as a matter of law through summary judgment.  The chain of ownership from the Company to Life Advance is bound up in triable questions of fact.  So, too, is the Company's interest in the Policy—as the 2017 settlement between the Company and Roberts is now challenged on grounds that cannot be resolved on the present motions.  The matter has been fully briefed and submitted.  The motions for summary judgment are denied for the reasons set forth below, and the request for findings of fact is granted in part and denied in part as explained below.

/ / /

/ / /

---

treated for or diagnosed with cancer, (*id.* at 15 (Application)), the period to contest that representation has elapsed.

# I.

# BACKGROUND

On January 23, 2016, when the Policy was issued on the life of Roberts, Roberts was the Company's CEO and the Company was both the owner of the Policy and sole designated beneficiary. Life Advance claims to be the current owner and sole beneficiary of the Policy pursuant to a series of transfers of the Policy between various individuals and entities. Specifically, Life Advance asserts the Policy was transferred from: (1) the Company to Roberts, (2) Roberts to Edward Spooner as Trustee of the Living Trust of Edward Spooner, (3) Spooner to Life Capital Group, Inc., and finally, (4) Life Capital to Life Advance.

Nicholson and Voelker contend they are the shareholders and owners of the Company, and as such, they are entitled to the Policy proceeds, not Life Advance. Nicholson asserts it was his idea to obtain the Policy for the benefit of the Company. Nicholson and Voelker contend Roberts illegally dissolved the Company and sold the Policy for $110,000, without authorization from the Company and while a lawsuit was pending against him in San Diego Superior Court for breach of fiduciary duty and "pillaging" the Company. *See California Energy Development, Inc. v. James Roberts, Theodore Haenggi,* San Diego Superior Court, County of San Diego, Case No. 37-2016-00015524-CU-BT-CTL (May 10, 2016).[2] Nicholson and Voelker further contend Life

---

[2] Five more lawsuits by Nicholson and Pruco, including the present case, followed: (1) *Pruco v. California Energy Development, Inc., Roberts, Bryson, Eric Porter, Robin Simon,* United States District Court, Southern Dist. of Cal., Case No. 17cv2362-L (WVG) (November 21, 2017) (the "2017 Action"); (2) *Nicholson v. California Energy Development, Inc., Pruco, Roberts, Bryson, Haenggi,* San Diego Superior Court, County of San Diego, Case No. 37-2018-00023974-CU-BC-CTL (May 16, 2018); (3) *Pruco v. California Energy Development, Inc., Roberts, Nicholson,* United States District Court, Southern Dist. of Cal., Case No. 18cv1524-L (WVG) (July 3, 2018); (4) *Pruco v. California Energy Development, Inc. v. Bryson, Nicholson, John Walsh, Spooner, Life Advance, Voelker,* United States District Court, Southern Dist. of Cal., Case No. 18cv2280-DMS (AHG) (October 1, 2018) (the present case); and (5) *Voelker, Nicholson*

4

Advance was "repeatedly" told about the litigation and that Roberts was not authorized to sell the Policy. Accordingly, Nicholson and Voelker assert Life Advance is not a *bona fide* purchaser and the sale of the Policy to Life Advance is invalid.

Specifically, Nicholson and Voelker contend that by March 2016, shortly after the Policy issued, Roberts began exhibiting "troubling conduct[,]" resigned as CEO, abandoned the Company, and stopped paying the Policy premiums, which caused Nicholson to pay past due premiums in the sum of $4,836.76 and arrange for another investor, John Walsh, to invest $50,000 to assist the Company with future premium payments. (Mem. of P. & A. in Supp. of Opp'n to Mot. at 3-4; Nicholson Decl. ¶¶9, 10; Bryson Decl. ¶¶11-15). After Roberts resigned, Bryson "assumed the role of acting CEO and CFO" of the Company and the board of directors voted to file suit against Roberts for "pillaging company assets and stealing client deposits." (Mem. of P. & A. in Supp. of Mot. at 4; Nicholson Decl. ¶11; Bryson Decl. ¶15). Thereafter, Roberts "devised a plan to transfer and sell ownership of the … Policy to several viatical companies" without notice to or authorization from the "shareholders or the board of directors" of the Company. (Mem. of P. & A. in Supp. of Mot. at 4; Nicholson Decl. ¶13). Nicholson claims that when he "discovered this scheme, he attempted to block the sale of the Policy to each viatical company" and directed all interested parties, including Life Advance, to the lawsuit the Company had filed against Roberts and informed them that Roberts was not authorized to sell Policy. (Mem. of P. & A. in Supp. of Mot. at 5; Nicholson Decl. ¶16; Bryson Decl. ¶17).

On July 19, 2016, "without shareholder notice or authorization" and while the lawsuit was pending against him, Roberts filed a Statement of Information ("SOI") with the California Secretary of State removing all officers and listing himself as CEO,

---

*v. Pruco, California Energy Development, Inc., Life Advance, Roberts, Craig Stack*, United States District Court, Northerners Dist. of Cal., Case No. 18cv6554-JSC (October 26, 2018).

Secretary and CFO of the Company and installing "his own children" as the new directors. (Mem. of P. & A. in Supp. of Mot. at 5; Nicholson Decl. ¶16). That same day Roberts submitted a request to Pruco to change ownership of the Policy from the Company to himself. On August 11, 2016, Roberts "illegally" dissolved the Company by filing a Domestic Stock Corporation Short Form Certificate of Dissolution with the California Secretary of State without notice to or authorization from shareholders, directors or creditors. (Mem. of P. & A. in Supp. of Mot. at 5; Nicholson Decl. ¶17.)

On March 1, 2018, Roberts created the Spooner Trust. (Mem. of P. & A. in Supp. of Mot. at 7; Nicholson Decl. ¶ 21). Nicholson and Voelker contend the Spooner Trust is the alter ego of Roberts as the trust was created for the "sole purpose of illegally obtaining viatical settlement proceeds[,]" and Roberts was the ultimate decision maker concerning the distribution of funds received from the viatical company. (Mem. of P. & A. in Supp. of Mot. at 7.)

As a result of these events, Nicholson filed a second lawsuit in San Diego Superior Court on May 16, 2018, against the Company, Roberts, Pruco, Bryson and Theodore Haenggi (another purported officer and director) for fraudulent conveyance and declaratory relief. (*Id.* at 8) (referencing *Nicholson v. California Energy Development, et al.,* Case No. 37-2018-00023974-CU-BC-CTL). Pruco also acted and filed three of its own lawsuits in this Court to determine ownership of the Policy. The first was filed on November 21, 2017, and sought declaratory relief against the Company, Roberts, Bryson, and Eric Porter and Robin Simon (purported directors of the Company). Nicholson, Voelker and Life Advance were not part of the 2017 Action. Pruco thereafter filed the present lawsuit on October 1, 2018, again seeking declaratory relief regarding ownership of the Policy (and interpleader of the Policy proceeds), and adding as defendants Nicholson, Voelker, Life Advance, Spooner and Walsh, as well as the Company and Bryson. Various cross-claims and third-party claims were also filed by Defendants, including the claims at issue in the present motion.

///

## II.
## DISCUSSION

Life Advance now moves for summary judgment on its claims for declaratory relief and interference with contract against Nicholson and Voelker. These claims are addressed below.

### A. Legal Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial burden of demonstrating that summary judgment is proper. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The moving party must identify the pleadings, depositions, affidavits, or other evidence that it "believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth." *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1306 (9th Cir. 1982).

The burden then shifts to the opposing party to show that summary judgment is not appropriate. *Celotex*, 477 U.S. at 324. The opposing party's evidence is to be believed, and all justifiable inferences are to be drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, to avoid summary judgment, the opposing party cannot rest solely on conclusory allegations. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986). Instead, it must designate specific facts showing there is a genuine issue for trial. *Id.*; *see also Butler v. San Diego District Attorney's Office*, 370 F.3d 956, 958 (9th Cir. 2004) (stating if defendant produces enough evidence to require plaintiff to go beyond pleadings, plaintiff must counter by producing evidence of his own). To do so, the non-moving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)) (internal quotation marks omitted).

More than a "metaphysical doubt" is required to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party must show that evidence in the record could lead a rational trier of fact to find in its favor. *Id.* at 587. "[M]ere disagreement or the bald assertion that a genuine issue of material fact exists no longer precludes the use of summary judgment." *Harper v. Wallingford*, 877 F.2d 728, 731 (9th Cir. 1989) (citation omitted). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255. "[I]f direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *TW. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

**B.  Declaratory Relief**

The first and primary claim in this case is for declaratory relief, and in this motion, Life Advance seeks a judicial declaration that it is both the owner and sole beneficiary of the Policy. In support of this request, Life Advance argues it is the owner of the Policy by virtue of the transfers set out above. Life Advance also asserts that Nicholson and Voelker, as alleged equity stakeholders in the Company, are collaterally estopped from asserting ownership of the Policy by virtue of the Court's dismissal order in the 2017 Action in *Pruco v. California Energy*, Case No. 17cv2362 L(WVG).

1.  The Chain of Ownership

On its first argument, Life Advance relies on "a clear chain of ownership" of the Policy, (Mem. of P. & A. in Supp. of Mot. at 9), which, according to Life Advance, ends with it taking ownership of the Policy and becoming its sole beneficiary. The evidence, however, does not establish a clear chain of ownership to Life Advance. Aside from the factual disputes set out by Nicholson and Voelker on ownership of the Policy, Life Advance fails to come forward with sufficient evidence in support of its ownership claim.

The evidence establishes that Pruco issued the Policy with a "Contract Date" of February 3, 2016. (*See* DePhillips Decl., Ex. A; Decl. of Craig Stack in Supp. of Mot. ("Stack Decl."), Ex. A.)  According to the Policy, Roberts is the insured and "California Energy Development Inc. of San Diego, California, its successors or assigns" is the owner and sole beneficiary.

Life Advance asserts the next link in the chain of ownership occurred on July 19, 2016, when Roberts submitted a request to Pruco to change ownership of the Policy from the Company to himself, and to change the beneficiary of the Policy from the Company to his wife, son and daughter.  (Statement of Uncontroverted Facts and Conclusions of Law in Supp. of Mot. ("SOF"), Fact O.)  Life Advance asserts Pruco processed this request on August 3, 2016. (*Id.*, Fact P.)  In support of these alleged facts, Life Advance relies on the allegations in Pruco's Second Amended Complaint ("SAC") in this case, which is one of the documents included in Life Advance's request for judicial notice. (*See* DePhillips Decl. ¶¶15-16; Req. for Judicial Notice in Supp. of Mot. ¶8.)  The SAC includes allegations consistent with Life Advance's proffer, (*see* SAC ¶¶13-14), but Life Advance has not shown these allegations are either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).  Moreover, the SAC is not verified.  Accordingly, the Court declines to take judicial notice of these facts.  *See Cox v. Ametek, Inc.*, No. 3:17-cv-01211-GPC-AGS, 2017 WL 4792424, at *4 (S.D. Cal. Oct. 24, 2017) ("the Court may take notice of the fact that these pleadings were filed and that the pleadings contain certain assertions; it may not, however, assume the factual truth of those assertions.")  Without them, there is no "clear chain of ownership" to the Policy, which defeats Life Advance's request for summary judgment on its declaratory relief claims.

Life Advance requests that the Court find other facts established pursuant to Federal Rule of Civil Procedure 56(g).  The Court finds the following facts relating to the "chain of ownership" have been established: (1) On July 5, 2018, Pruco processed a

request to change ownership of the Policy to "Edward Spooner, Trustee(s) of the Living Trust of Edward Spooner under agreement dated March 01, 2018, as amended, or the successor(s) in trust." (Decl. of Craig Stack in Supp. of Reply, Ex. A.) Four days after that, Spooner and Roberts entered into a Viatical Settlement Contract with Life Capital Group under which Life Capital purchased the Policy from Spooner for $110,000. (Stack Decl., Ex. D.) Approximately ten days later, Pruco processed a request to change ownership of the Policy to Life Advance LLC. (Stack Decl., Ex. C.)

Thus, the only link in the chain that has not been established is the first involving the transfer of the Policy from the Company to Roberts. This is a notable link in that this transfer required approval of the directors of the Company—whoever they might have been at that time. As Life Advance points out, the "authority to manage the business and affairs of a corporation is vested in its board of directors, not in its shareholders." (Mem of P. & A. in Supp. of Mot. at 11) (citing Cal. Corp. Code § 300(a)). Life Advance has not provided undisputed evidence in support of the Company's transfer of ownership to Roberts, which dooms its request for summary judgment.

Life Advance cites an SOI filed with the California Secretary of State on July 19, 2016, in which Roberts is listed as CEO, Secretary and CFO of the Company and the directors are identified as Roberts' wife and children, Angel, James and Valentine Roberts. That same day, Roberts also submitted a request to Pruco to change ownership of the Policy from the Company to himself, apparently based on the foregoing SOI. But Nicholson and Bryson contend that Roberts had already resigned from the Company in March of 2016 and that Bryson, through "a majority of the Board's approval" was then "acting CEO and CFO" of the Company. (Bryson Decl. ¶15.) It is unclear who the board members were at that time, as they are not identified by Bryson or Nicholson.

An SOI filed with the California Secretary of State on November 9, 2015, identifies Roberts, Simon and Porter as directors of the Company. The lawsuit filed by the Company against Roberts and Haenggi on May 10, 2016, identifies only those two defendants as directors. The July 19, 2016 SOI identifies three of Roberts' family

members as directors. Other names appear in the various documents submitted to the Court, including John Walsh and Robert Mansueto. They appear to be investors in the Company, though their roles are not clearly specified. At various times throughout the tumultuous history of the Company it appears everyone—whoever was present—had a vote, no matter their role with the Company. Nicholson states that in March 2016, after Roberts purportedly resigned and abandoned the Company, the "remaining members of the Company, including myself, voted to continue the Company and continue doing business." (Nicholson Decl. ¶ 11.) It is unclear who the "members" are, who voted and in what capacity.

These events demonstrate that a material dispute exists over who controlled the Company at relevant times, and whether Roberts had authority to act on behalf of the Company and change ownership of the Policy to himself on July 19, 2016. Given the failure of Life Advance to prove ownership, and the triable questions of fact raised by Nicholson and Voelker regarding Roberts' authority, summary adjudication of ownership of the Policy is denied.

2. Collateral Estoppel

Life Advance also argues it is entitled to summary judgment on its declaratory relief claims based on collateral estoppel. Specifically, Life Advance asserts Nicholson and Voelker, as alleged equity stakeholders in the Company, are collaterally estopped from claiming proceeds of the Policy by virtue of the Court's dismissal order in the 2017 Action.

"The doctrine of collateral estoppel promotes judicial economy and protects parties from the burden of successive litigation by barring the relitigation of issues in certain circumstances." *Maciel v. C.I.R.*, 489 F.3d 1018, 1023 (9th Cir. 2007). Those circumstances are:

(1) "'the issue necessarily decided at the previous proceeding is identical to the one which is sought to be relitigated;'" *Af-Cap, Inc. v. Chevron Overseas (Congo) Ltd.*, 475 F.3d 1080, 1086 (9th Cir. 2007) (citation omitted);

(2) "'there was a full and fair opportunity to litigate the issue in the previous action;'" *In re Palmer*, 207 F.3d 566, 568 (9th Cir. 2000) (citation omitted);

(3) "'the issue was actually litigated in that action;'" *id.* (citation omitted);

(4) "'the issue was lost as a result of a final judgment in that action;'" *id.* (citation omitted); and

(5) "'the party against whom collateral estoppel is asserted was a party or in privity with a party at the first proceeding.'" *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 (9th Cir. 2006) (citation omitted).

The party invoking collateral estoppel bears the burden of establishing each of these elements. *Pardo v. Olson & Sons, Inc.*, 40 F.3d 1063, 1066 (9th Cir. 1994) (citation omitted). Life Advance has not shown all of the elements of collateral estoppel are met.

To the extent Life Advance seeks to collaterally estop Nicholson and Voelker from challenging ownership, they were not parties or in privity with a party to that lawsuit. As Life Advance notes, a "corporation is a distinct legal entity separate from its stockholders." (Mem. of P. & A. in Supp. of Mot. at 11) (citing *Maxwell Café v. Department of Alcohol Control,* 142 Cal. App. 2d 73, 78 (1956)). While the Company was a party to the 2017 Action (and could be bound by the settlement), Nicholson and Voelker as alleged shareholders were not.

In addition, Life Advance acknowledges case law declining to bar re-litigation of issues following dismissal of an action if the issues, as here, were not actually litigated or did not result in a final judgment. (*See* Mem. of P. & A. in Supp. of Mot. at 14.) Moreover, Nicholson has raised issues about the settlement itself and whether an authorized representative signed for the Company.

Pruco alleges in the SAC in the present action that "[o]n or about January 10, 2017, Bryson, acting as CFO of [the Company], … signed a settlement agreement relinquishing claims to the Policy, including his forms to effect assignment to Walsh, recognizing Roberts as having 'assumed ownership and control of the [Policy],' and that [the

Company] 'releases all claims on the [P]olicy.'" (SAC ¶18.) But Bryson has a different take on the settlement:

> The parties in that [2017] matter ultimately agreed to settle and dismiss the case without prejudice. However, we did so in our individual capacities and not on behalf of the Company. Indeed, I made sure at the time that I was signing in my personal capacity and not as a representative of the [C]ompany.

(Bryson Decl. ¶26.) Under the circumstances, the Court declines to apply the doctrine of collateral estoppel and allow Life Advance to use it as a bar to litigating whether the Company relinquished its claims to the Policy. (*See* Mem. of P. & A. in Supp. of Mot. at 13) (stating "The fact that Life Advance is not a party to the 2017 [A]ction does not preclude its collaterally estopping [the Company], who is a party.") Notably too, Life Advance relies on Roberts' authority to act on behalf of the Company to secure its "chain of ownership," yet Roberts purportedly dissolved the Company on August 11, 2016. It appears a dissolved corporation can act to effect a settlement. *See* Cal. Corp. Code § 2010(a).[3] But who would act on behalf of the Company to affect the settlement: Roberts or Bryson? The SOI filed on November 9, 2015 lists Roberts as CEO and Bryson as Secretary and CFO, (Nicholson Decl., Ex. I), while the SOI filed on July 19, 2016 lists Roberts as CEO, Secretary and CFO and drops Bryson altogether. (*Id.,* Ex. J). Under the circumstances, collateral estoppel is unavailable and does not warrant summary judgment for Life Advance on its claims for declaratory relief.

**C.  Interference with Contract**

The only other claims at issue here are Life Advance's claims against Nicholson and Voelker for interference with contract.

///

---

[3] California Corporation Code § 2010(a) provides a "corporation which is dissolved nevertheless continues to exist for the purpose of winding up its affairs, prosecuting and defending actions by or against it and enabling it to collect and discharge obligations, dispose of and convey its property and collect and divide its assets, but not for the purpose of conducting business except so far as necessary for the winding up thereof."

> The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage.

*Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990).

Life Advance asserts it has established all of these elements as against Nicholson and Voelker, and thus it is entitled to summary judgment on these claims. However, as discussed, Life Advance has failed to show the first element, namely that it is the owner of the Policy, and thus has a valid contract with Pruco. Absent that showing, Life Advance is not entitled to summary judgment on these claims.

## III.

## CONCLUSION AND ORDER

This is an intractable entanglement of the parties' own making. If Nicholson and Voelker prevail at trial on the ownership issue, Life Advance is entitled to nothing under the Policy. If Life Advance prevails on its assertion that the Company relinquished all claims to the Policy, then Nicholson and Voelker—as alleged shareholders of the Company—are entitled to nothing under the Policy. Meanwhile, the Policy proceeds are deposited in the registry of the Court and await disbursement, but to whom?[4]

The parties will contact the magistrate judge assigned to the case and schedule a settlement conference to occur within 30 days from issuance of this Order. For the

---

[4] Even if the Company is found not to have relinquished its claims to the Policy and Life Advance is found not to be the owner of the Policy, it is unclear how the Company's assets, *i.e.,* the Policy proceeds, would be divided. Life Advance contends the consulting agreement submitted by Nicholson in opposition to the present motions "does not make [him] an employee of [the Company], nor does it purport to give him any ownership interest in [the Company]." (Reply Br. at 2.) Also, "[t]here are no corporate documents of [the Company] submitted to support any of the allegations made by Nicholson." (*Id.*)

reasons set out above, Life Advance's motion for summary judgment is denied, and its request for findings of fact is granted in part and denied in part as set out above.

**IT IS SO ORDERED**.

Dated: August 25, 2020

_____
Hon. Dana M. Sabraw
United States District Judge