UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PRUCO LIFE INSURANCE COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA ENERGY DEVELOPMENT INC., *et al.*,<br><br>Defendants. | Case No.: 3:18-cv-02280-DMS-AHG<br><br>**ORDER:**<br><br>**(1) DENYING JOHN J. WALSH'S MOTION FOR ORDER TO SHOW CAUSE;**<br><br>**(2) ORDERING JOHN WALSH TO SHOW CAUSE WHY HE SHOULD NOT BE SANCTIONED FOR SUBMITTING FALSE STATEMENTS TO THE COURT; and**<br><br>**(3) GRANTING MOTION TO ENFORCE SETTLEMENT AGREEMENT**<br><br>[ECF Nos. 191, 215] |

This matter comes before the Court on (1) Life Advance, LLC's ("Life Advance") Motion to Enforce Settlement Agreement (ECF No. 191); (2) John J. Walsh's Motion for Order to Show Cause Why Life Advance, Craig Stack and Russell De Phillips Should Not Be Held in Contempt; or Alternatively, an Injunction to Prevent Further Harassment ("Motion for Order to Show Cause") (ECF No. 215) and (3) Mr. Walsh's testimony during the Court's hearing on the Motion for Order to Show Cause that he submitted a pleading and declaration containing false statements to the Court.

## I. BACKGROUND

The undersigned previously issued a Report and Recommendation ("R&R") recommending that the Court find it lacks subject matter jurisdiction to consider either the Motion for Order to Show Cause or the Motion to Enforce Settlement Agreement, because they both concern the scope and enforceability of the settlement agreement between Life Advance and Mr. Walsh, and neither the joint motion to dismiss Mr. Walsh nor the Dismissal Order provided the Court would retain jurisdiction to enforce the agreement. *See* ECF No. 225. However, on March 25, 2021, the Court granted Life Advance's motion (ECF No. 228) to alter or amend the Order dismissing Mr. Walsh from this case (ECF No. 157), and amended the Order to include a retention of jurisdiction provision consistent with the parties' settlement agreement. *See* ECF No. 237. As a result, the undersigned's R&R was rendered moot, and both motions are now ripe for ruling. *Id.* at 4 n.1.

The Court held a hearing on the Motion for Order to Show Cause and Motion to Enforce Settlement Agreement on June 1, 2021. ECF No. 252. This order follows.

## II. DISCUSSION

### a. Motion for Order to Show Cause (ECF No. 215)

During the June 1, 2021 hearing, Mr. Walsh testified under oath that many of the statements in his Motion for Order to Show Cause and in his attached Declaration, which he submitted under penalty of perjury, were false. Specifically, Mr. Walsh confirmed during the hearing that counsel for Life Advance, Russell De Phillips, and Life Advance's

principal, Craig Stack, have never asked him to sign any declaration stating any facts whatsoever about this litigation. This testimony conflicts with the following allegations in Mr. Walsh's Declaration (ECF No. 215):

> 2. I sadly report that Life Advance's principal Craig Stack and its attorney Russell Dephillips are attempting to get me to lie for them and intentionally omit information to assist them win this case against the other parties.
> 
> . . .
> 
> 4. After the $50,000 payment and after I was dismissed from the case, in September of 2020 Craig Stack, the owner of Life Advance, and Russell Dephillips, the attorney for Life Advance, contacted me and asked me to sign declarations on their behalf. I was surprised to learn that the statements they want me to make were blatantly false and a clear attempt by Life Advance to suborn perjury from me.
> 
> 5. I was asked to attest that Life Advance was innocent and a bona fide purchaser of the key-man Policy. . . .
> 
> . . .
> 
> 11. When I refused to declare that they were not lawful purchasers Craig and Russell became very angry with me and berated me by stating that they had paid me $50,000 for my cooperation and that I needed to comply or face legal consequences and monetary damages.
> 
> . . .
> 
> 13. I was also asked to make a declaration that Mickey Nicholson was not an owner of California Energy Development Inc. However, this is also false. . . .
> 
> . . .
> 
> 15. Life Advance is putting extraordinary pressure on me, threatening to sink me legally and financially. After completely terrifying me with legal costs and being sued again, I returned the settlement check to my previous attorney Elliott Kanter and told him to return the settlement money because I am not interested in being threatened and I lack the health to continue being threatened by Life Advance. . . . [S]hame on Life Advance for threatening me for not lying on their behalf.
> 
> 16. Life Advance proclaims they can make me say whatever they want because my testimony was purchased. . . .
> 
> 17. If I were to comply with their request for false testimony, it would be me submitting perjury in exchange for bribery and I am not willing to do that.
> 
> . . .

22. I now pray that the Court prevent Life Advance from harassing me any further[.]

*Id.* at 10-14.

As an initial matter, the Court **DENIES** the Motion for Order to Show Cause or for an injunction against Life Advance, Mr. De Phillips, and Mr. Stack, in view of Mr. Walsh's confirmation that the facts alleged in support of the motion are false. However, Mr. Walsh's submission of false statements to the Court, in both a pleading and sworn declaration, compels the Court to issue an order to show cause against him.

A party who submits false pleadings to the Court may be sanctioned for improper conduct pursuant to several different sources of authority, including (1) Rule 11(b) of the Federal Rules of Civil Procedure; (2) 28 U.S.C. § 1927; or (3) the Court's inherent authority. *See Garza v. Chavez*, No. CV 10-7658-VBF MAN, 2014 WL 3571721, at *20 (C.D. Cal. Mar. 4, 2014), *report and recommendation adopted*, No. LA CV 10-07658-VBF, 2014 WL 3572148 (C.D. Cal. July 18, 2014) (discussing these three avenues to sanction improper conduct); *Montgomery v. Etreppid Techs.*, LLC, No. 306CV0056PMPVPC, 2008 WL 11401773, at *1 (D. Nev. Apr. 1, 2008) (discussing the "variety of sanctions [that] may be imposed by a federal court when it is determined that false evidence has been presented[,]" including Rule 11 sections and inherent power sanctions. *But see Arnold v. Cty. of El Dorado*, No. 2:10-CV-3119 KJM GGH, 2012 WL 3276979, at *4 (E.D. Cal. Aug. 9, 2012), *report and recommendation adopted*, No. 210CV3119KJMGGHPS, 2012 WL 13046344 (E.D. Cal. Sept. 27, 2012) (finding that "[t]here is no specific rule which discusses sanctions for perjury" and concluding that the sanctions available derive "from the inherent power of the court") (citing *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991)).

Rule 11(b) applies to signed writings with the Court, and provides, in pertinent part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge,

information, and belief, formed after an inquiry reasonable under the circumstances:

> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> . . . [and]
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Civ. P. 11(b)(1), (3).

The Court also has statutory authority pursuant to 28 U.S.C. § 1927 to require anyone "who so multiplies the proceedings in any case unreasonably and vexatiously . . . to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." The imposition of sanctions under § 1927 requires a finding that the person against whom the sanctions are imposed acted "recklessly or in bad faith[.]" *United States v. Blodgett*, 709 F.2d 608, 610 (9th Cir. 1983) (citation omitted). Notably, section 1927 sanctions may be imposed on a *pro se* party, not just attorneys. *Wages v. I.R.S.*, 915 F.2d 1230, 1235-36 (9th Cir. 1990).

Similarly, under the Court's inherent power, the court may levy sanctions, including attorney fees, when a party has "'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (quoting *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 776 (1980)); *see also* CivLR 83.1(a) ("Failure of counsel, or of any party, to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court may be grounds for imposition by the court of any and all sanctions authorized by statute or rule or within the inherent power of the court, including, without limitation, dismissal of any actions, entry of default, finding of contempt, imposition of monetary sanctions or attorneys' fees and costs, and other lesser sanctions").

The Court's inherent power "is 'both broader and narrower than other means of imposing sanctions.' [] On the one hand, the inherent power 'extends to a full range of litigation abuses.' On the other, the litigant must have 'engaged in bad faith or willful

disobedience of a court's order'" to levy sanctions including attorney's fees. *Fink*, 239 F. 3d at 992 (quoting *Chambers*, 501 U.S. at 46–47). "Before awarding [attorney's fees] sanctions under its inherent powers, however, the court must make an explicit finding that [the conduct at issue] 'constituted or was tantamount to bad faith.'" *Primus Auto. Fin. Servs. v. Batarse*, 115 F.3d 644, 648 (9th Cir. 1997) (quoting *Roadway Express*, 447 U.S. at 767). An explicit finding of bad faith "is especially critical when the court uses its inherent powers to engage in fee-shifting." *Primus Auto. Fin. Servs.*, 115 F.3d at 648. Bad faith can be established "by 'delaying or disrupting the litigation or hampering enforcement of a court order.'" *Id*. (quoting *Hutto v. Finney*, 437 U.S. 678, 689 n.14 (1978)). "Clearly, committing perjury is acting in 'bad faith.'" *Arnold*, 2012 WL 13046344, at *4.

Accordingly, Mr. Walsh is **ORDERED** to **SHOW CAUSE** why the Court should not issue sanctions against him for submitting an admittedly false pleading and declaration to the Court. Details of the show cause hearing are provided below.

### b. Motion to Enforce Settlement Agreement

Once a case has been dismissed, a proceeding to enforce a settlement agreement requires an independent basis for jurisdiction. *Kokkonen*, 511 U.S. at 378. If the district court expressly retains jurisdiction over the settlement agreement or incorporates the terms of the settlement agreement into the dismissal order, then the Court may exercise ancillary jurisdiction over a motion to enforce the agreement. *Id.* at 382. In light of the Court's amendment of the dismissal order to expressly retain jurisdiction to enforce the settlement agreement, the Court finds it has ancillary jurisdiction here. *See Flanagan v. Arnaiz,* 143 F.3d 540, 544 (9th Cir. 1998) (concluding the district court had retained jurisdiction to enforce the settlement agreement where "the district court made exactly the sort of express provision described by *Kokkonen*").

In Mr. Walsh's Opposition to the Motion to Enforce Settlement Agreement (ECF No. 213), he relies solely on the same admitted falsehoods described above. Namely, Mr. Walsh argues that "it would be improper" to enforce the settlement agreement because

Life Advance committed misconduct when Mr. De Phillips and Mr. Stack contacted Mr. Walsh "and asked him to sign declarations on their behalf" and "the statements [Mr. Walsh] was asked to sign were blatantly false and a clear attempt by Life Advance to suborn perjury from Walsh." *Id.* at 5-6. The Opposition goes on to repeat the now-admitted false statements that Mr. Stack and Mr. De Phillips "became very angry" and "berated" Mr. Walsh for refusing to sign non-existent declarations, and that Mr. Walsh was also asked to make a declaration that Mickey Nicholson was not an owner of California Energy Development, Inc., that Life Advance "asserts that they can make Walsh say whatever they want because his testimony was purchased." *Id.* at 6-8. Because these statements are admittedly false, the Court declines to take them into consideration in determining whether to enforce the settlement agreement.

Mr. Walsh also contends that he has not breached the agreement, and that the motion alleges only an "anticipatory breach without showing the Court what Walsh refused to sign or what lawful process Walsh has refused." *Id.* at 10. However, the alleged breach is not "anticipatory." Mr. Walsh is required under the settlement agreement (1) not to interfere with Life Advance's prosecution of its claims to the proceeds of the life insurance policy at issue in this interpleader action; (2) to cooperate with Life Advance in its prosecution of its claim to ownership of the policy and the policy proceeds, "including but not limited to providing written declarations regarding Life Advance's ownership of all rights to the [p]olicy and the [p]olicy proceeds[.]" *See* ECF No. 191-2 at ¶¶ 4.F., 14.

Mr. Walsh has not complied with these provisions. Life Advance has thoroughly documented its numerous attempts to reach out to Mr. Walsh through his former attorney to discuss the facts of the case with him, and Mr. Walsh has repeatedly refused to speak with Mr. De Phillips at all. *See* ECF No. 251 at 11-21. Indeed, when Mr. Walsh's former attorney eventually was able to arrange a phone call to discuss the case, Mr. Walsh hung up—a fact he admits in his Opposition. *See* ECF No. 213 at 9; *see also* ECF No. 191-2, De Phillips Decl. ¶ 7.

Additionally, Life Advance has submitted the meeting minutes from a special

shareholders' meeting for the newly revived California Energy Development, Inc. ("CEDI"), during which Mr. Walsh was elected Chief Financial Officer, and the shareholders voted to instruct the directors to seek to set aside the entry of default against CEDI in this case so that it could make a claim to the proceeds of the policy. *See* ECF No. 251 at 30-35. Although Mr. Walsh abstained from voting during the meeting and thus argues that his participation did not constitute a violation of the obligation not to interfere, Mr. Walsh also contacted CEDI's attorney, Benjamin Gale, to ask whether he could assist CEDI in pursuing its claim to the proceeds in this litigation. *See* ECF No. 191-2 at 3-4, De Phillips Decl. ¶ 10. Mr. Walsh admitted to that fact during the hearing.

Notably, the settlement agreement contains an assignment provision stating that Mr. Walsh "hereby assigns and transfers to Life Advance any and all claims and rights Walsh has or may have . . . based upon the allegations made by Walsh in [this litigation] related to his payment or transfer of money or other consideration to or for the benefit of [CEDI], Timothy Bryson, James Roberts, Pruco[,] or any related person or entity, to prosecute such claims and to assert such rights in his name or otherwise." ECF No. 191-2 at 16. For that reason, Life Advance seeks to interview Mr. Walsh not solely for the purpose of obtaining his cooperation with respect to its independent claim to the proceeds, but also to understand the facts underlying **Mr. Walsh's** claimed right to collect the proceeds. *See id.* at 5-6, De Phillips Decl. ¶ 21. Therefore, Mr. Walsh's adamance that cooperating with Life Advance's prosecution of its claims—as required by the settlement agreement—would somehow necessarily require him to commit perjury (because he does not agree that Life Advance has a valid independent claim to the proceeds) is unpersuasive.

Before the formal settlement agreement was signed on May 18, 2020, the basic terms were first agreed upon by Life Advance and Mr. Walsh during the March 5, 2020 Early Neutral Evaluation Conference ("ENE") before the undersigned. During the ENE, Mr. Walsh was represented by counsel and gave no indication that he was not of sound mind or otherwise did not understand or consent to the terms of the agreement. Mr.

Walsh's attorney ably explained the terms of the agreement to him before they were committed to writing in a preliminary term sheet that was signed that day, which included the term requiring Mr. Walsh to cooperate with Life Advance in the prosecution of its claim to ownership of the policy, including but not limited to providing written declarations regarding Life Advance's ownership of all rights to the proceeds. *See* ECF No. 191-2 at 11-12. Mr. Walsh has never asserted that he did not understand the terms of the agreement, that the agreement was not voluntarily made, or otherwise argued that the terms are unenforceable against him. Rather, he has expressed disappointment with the terms of the agreement after the fact. Buyer's remorse is not grounds for finding the settlement agreement unenforceable. *See, e.g., Holt v. MacArthur*, No. 11CV1502-GPC-KSC, 2014 WL 940327, at *20 (S.D. Cal. Mar. 10, 2014); *Khadavi v. Stalgi*, Inc., No. CV 20-7948-RSWL-EX, 2021 WL 929099, at *7 (C.D. Cal. Mar. 10, 2021) ("Plaintiff's allegation that the settlement agreement was 'not fairly made,' without more, merely indicates buyer's remorse, which does not constitute a basis for rescinding a settlement agreement.") (citing *Tarpy v. County of San Diego*, 110 Cal. App. 4th 267, 279 (2003)). Accordingly, the Court **GRANTS** Life Advance's Motion to Enforce Settlement Agreement.

Mr. Walsh asserts that he "remains ready, able, and willing to cooperate as a witness in this case[,]" a position he repeated during the June 1, 2021 hearing. *See* ECF No. 213 at 9. However, Mr. Walsh's conduct thus far shows otherwise, and the Court finds it necessary to step in. "[T]he Court's enforcement powers include the inherent authority to order a party's specific performance of acts required by the settlement agreement and to award damages or other sanctions for noncompliance." *Facebook, Inc. v. ConnectU, Inc.*, No. C 07-01389 JW, 2008 WL 8820476, at *3 (N.D. Cal. June 25, 2008), *aff'd sub nom. Facebook, Inc. v. Pac. Nw. Software, Inc.*, 640 F.3d 1034 (9th Cir. 2011) (citing *TNT Mktg.*, 796 F.2d 276, 278 (9th Cir. 1986)). As discussed during the hearing, Mr. Walsh is **ORDERED** to cooperate with Life Advance by submitting to an interview regarding his knowledge of the facts related to this case. The interview may be

recorded and must take place no later than **July 9, 2021**.

In addition to the potential availability of fee-shifting sanctions for Mr. Walsh's misconduct, the parties' settlement agreement also contains an attorney fee provision stating that if it becomes necessary to bring legal action to enforce the agreement, the unsuccessful party in such litigation "shall pay reasonable attorney's fees and costs to the prevailing party in such action." *See* ECF No. 191-2 at 20. Thus, no later than **July 6, 2021**, counsel for Life Advance shall file and serve a declaration detailing the costs and attorney fees, including the hourly rate, that Life Advance incurred in briefing the Motion to Enforce Settlement Agreement and in responding to Mr. Walsh's baseless Motion for Order to Show Cause, including all time spent attending the hearing to discuss the motions.

### III. CONCLUSION

For the reasons set forth above, John Walsh's Motion for Order to Show Cause Why Life Advance, Craig Stack and Russell De Phillips Should Not Be Held in Contempt; or Alternatively, an Injunction to Prevent Further Harassment (ECF No. 215) is **DENIED**.

On the Court's own order, John Walsh is **ORDERED** to **SHOW CAUSE** why sanctions should not be imposed against him for submitting false statements to the Court in the form of both a false pleading and perjured declaration. The Court will hold a show cause hearing on **July 13, 2021** at **1:00 p.m.** before Magistrate Judge Allison H. Goddard. The hearing will be recorded. However, **personal appearances are not required**. Attendees must call the chambers teleconference line at **1-877-873-8018** and use access code **8367902** to attend. Failure to appear telephonically for the Show Cause Hearing shall constitute an independent basis for sanctions. Mr. Walsh may also submit a written response to this order no later than **July 6, 2021**.

Life Advance's Motion to Enforce Settlement Agreement (ECF No. 191) is **GRANTED**. John Walsh must cooperate with Life Advance's prosecution of its claims (including the claims assigned to Life Advance by Mr. Walsh in the settlement

agreement) by submitting to an interview regarding his knowledge of the facts related to this litigation and the underlying life insurance policy by **July 9, 2021**.

Life Advance must submit a declaration detailing costs and attorney fees incurred in connection with both motions at issue in this order no later than **July 6, 2021**.

**IT IS SO ORDERED.**

Dated: June 16, 2021

_____
Honorable Allison H. Goddard
United States Magistrate Judge