1
2
3
4
5
6
7
8    UNITED STATES DISTRICT COURT

9    SOUTHERN DISTRICT OF CALIFORNIA

10

11   PRUCO LIFE INSURANCE
     COMPANY,                          Case No.:  3:18-cv-02280-DMS-AHG
12
                          Plaintiff,   **ORDER GRANTING IN PART AND**
13                                     **DENYING IN PART EX PARTE**
                                       **MOTION FOR ORDER TO SHOW**
14   v.                                **CAUSE WHY JOHN J. WALSH**
                                       **SHOULD NOT BE ENJOINED AND**
15   CALIFORNIA ENERGY                 **SANCTIONED FOR FILING STATE**
     DEVELOPMENT INC.,** *et al.*,**        **COURT COMPLAINT IN**
16                                     **VIOLATION OF SETTLEMENT**
                          Defendants.  **AGREEMENT, FOR INJUNCTIVE**
17                                     **RELIEF AND AWARD OF**
                                       **ATTORNEY FEES**
18
19
20                                     **[ECF NO. 375]**
21
22
23
24
25
26
27
28

                                       1

Before the Court is the *Ex Parte* Motion filed by Life Advance, LLC ("Life Advance") for an Order to Show Cause Why John J. Walsh Should Not Be Enjoined and Sanctioned for Filing State Court Complaint in Violation of Settlement Agreement, for Injunctive Relief and Award of Attorney Fees (the "Motion for Order to Show Cause"). ECF No. 375. For the reasons that follow, the Motion for Order to Show Cause is **GRANTED in part** and **DENIED in part**.

## I.     BACKGROUND

This case has an extensive factual and procedural history, which the Court will not recount in its entirety here. Relevant to the instant motion, Plaintiff Pruco Life Insurance Company ("Pruco") filed the operative Second Amended Complaint for interpleader in this action to ask the Court to determine the respective rights and claims of the named Defendants (including but not limited to Life Advance and John J. Walsh) to the proceeds of a $1 million key-man life insurance policy (the "Policy") on the life of decedent James Roberts, the former CEO of fellow named Defendant California Energy Development, Inc. *See* ECF No. 102. The Court allowed Pruco to deposit the policy proceeds into the Court registry and dismissed Pruco from the case on February 5, 2020. ECF No. 119.

On March 5, 2020, Life Advance and Mr. Walsh reached a settlement at the Early Neutral Evaluation Conference ("ENE") before the undersigned. ECF No. 125. That day, Mr. Walsh and Life Advance's representative with full settlement authority, Craig Stack, committed the settlement agreement to writing in a handwritten six-paragraph agreement, signed by Mr. Walsh and Mr. Stack. *See* ECF No. 191-2 at 11-12. Life Advance and Mr. Walsh later executed a formal written settlement agreement in May 2020 (signed by Mr. Walsh on May 18, 2020), leading to the dismissal of Mr. Walsh's claims from the case on June 10, 2020. ECF No. 157. *See also* ECF No. 191-2 at 14-23, Ex. B to De Phillips Decl. (formal settlement agreement between Mr. Walsh and Life Advance).

In the formal settlement agreement, the parties agreed that within 30 days of receipt of Mr. Walsh's signature to the Agreement and the signature of Mr. Walsh's attorney, Elliott Kanter, approving the Agreement as to form and content, Life Advance would pay

Mr. Walsh $50,000. *See* ECF No. 191-2 at 16. In exchange, Mr. Walsh agreed to release all claims against Life Advance, Life Capital Group, Inc., Mills, Potoczak & Company, Pruco Life Insurance Company, Prudential Insurance Company of America, Edward Spooner, Edward Spooner as Trustee of the Living Trust of Edward Spooner dated 3/1/18, James David Roberts, Serena Collyer, Maria Castillo de Roberts, and Angel Roberts (identified in the settlement agreement as the "Life Advance Released Parties"), including but not limited to those claims in any way related to the Policy, the proceeds of the Policy, or based in any way upon the underlying facts which gave rise to the claims alleged or which could have been alleged in this action. *Id.* at 16-17. A separate provision of the agreement provided that this release provision (as well as Life Advance's release of its claims against Mr. Walsh) "are general releases" and that the parties agreed that "they have accepted the mutual promises specified herein as a complete compromise of matters involving disputed issues of law and fact, and they assume the risk that the facts or law may be otherwise than they believe." *Id.* at 18-19.

The Settlement Agreement also contained, *inter alia*, the following provisions:

- An assignment provision, stating that Mr. Walsh "hereby assigns and transfers to Life Advance any and all claims and rights Walsh has or may have against California Energy [Development, Inc.], Pruco and any other person or entity based upon the allegations made by Walsh in [this action] related to his payment or transfer of money or other consideration to or for the benefit of California Energy, Timothy Bryson, James Roberts, Pruco or any related person or entity, to prosecute such claims and to assert such rights in his name or otherwise."

- A covenant not to sue or prosecute, stating that "[e]xcept for the enforcement of the obligations created by this Agreement, and except as otherwise provided herein, the Parties agree never to sue, prosecute or file with any court any claim against or regarding each other which relates in any way to any claims released pursuant to this Agreement."

- A covenant not to interfere, stating that Mr. Walsh "agrees never to interfere with

Life Advance in the prosecution of any claim related to the Policy, the proceeds of the Policy, or any claims or rights he assigned to Life Advance under this Agreement."

- An indemnity provision, stating that the parties "shall indemnify, defend and hold harmless each other from and against all liability, claims, damages, costs, and fees of attorneys related in any way to any breach of this Agreement by the other Party."

- An attorney fee provision stating that "[i]n the event it should become necessary to commence an action to enforce the provisions of, or pursuant to this Agreement, the unsuccessful party in such litigation shall pay reasonable attorney's fees and costs to the prevailing party in such action."

- A provision containing representations and warranties by Mr. Walsh, including that "he has the mental capacity to understand, and he does understand, the nature and effect of the transactions described in this Agreement," that "he has investigated the facts and evidence regarding the subject matter of this Agreement," that "he has had the opportunity to consult with an independent lawyer of his own choice before executing the Agreement," and that the settlement "is fair and equitable."

- A good-faith settlement provision stating that the parties "mutually agree and represent that the settlement set forth herein was entered into in good faith and to the satisfaction of all Parties."

- Several provisions (described in more detail below) stating that the parties agreed to the sole and exclusive jurisdiction of this Court, and specifically the undersigned Magistrate Judge, to enforce and interpret the settlement agreement.

*Id.* at 18-22.

This is not the first time the Court has had to exercise its ancillary jurisdiction to enforce the settlement agreement between Life Advance and Mr. Walsh. The Court

previously granted a motion by Life Advance to enforce the settlement agreement on June 16, 2021, requiring Mr. Walsh to cooperate with Life Advance's prosecution of its claims by submitting to an interview regarding his knowledge of the facts related to this litigation, ordering Mr. Walsh to show cause why he should not be sanctioned for submitting false statements to the Court, and requiring Mr. Walsh not to interfere with Life Advance's prosecution of its claims to the proceeds of the life insurance policy at issue in this action. *See* ECF No. 262.

Notwithstanding the settlement and this Court's order enforcing the same, on April 21, 2022, Mr. Walsh filed a state court action in the Superior Court of California for the County of San Diego, Case No. 37-2022-00015515-CU-MC-CTL (the "state court action"), against all parties to this case, including Life Advance, as well as his former counsel in this case Elliot Kanter. *See* ECF No. 375-3. The full caption of the complaint is "Plaintiff's Federal Complaint Seeking Full State Exhaustion of his Federal Claims; Demand for Five Million ($5,000,000) in Damages; Declaration of Dr. John James Walsh Submitted Under Penalty of Perjury; Jury Trial Requested if Permitted by Law; Memorandum of Points and Authorities in Support Thereof." *Id.* at 16. Mr. Walsh named as defendants in the state court action California Energy Development, Inc. ("CEDI"), Timothy Bryson (who died in July 2021), Mickey Nicholson, Edward Spooner, Trustee of the Edward Spooner Living Trust of Edward Spooner [sic], Life Advance, Craig Stack, the Estate of James Roberts, Jason Voelker, Pruco, and Elliott Kanter. *Id.*

The Court held a status conference to discuss the state court action on May 13, 2022. ECF No. 360. Mr. Walsh appeared at the hearing via Zoom and represented to the Court that he would voluntarily dismiss the state court action. *Id.* However, contrary to his representations to the Court, Mr. Walsh did not dismiss the state court action. Accordingly, on June 30, 2022, Life Advance filed the Motion for Order to Show Cause, seeking specific performance of the settlement agreement and sanctions against Mr. Walsh. ECF No. 375.

The Court set a briefing schedule on Life Advance's motion on July 6, 2022, requiring Mr. Walsh to file an Opposition to the Motion for Order to Show Cause by

July 22, 2022, and setting a hearing date for August 5, 2022 at 3:30 p.m. ECF No. 378. On July 20, 2022, Life Advance filed a Supplemental Declaration in support of the Motion for Order to Show Cause, informing the Court that its counsel recently became aware[1] that Mr. Walsh has also filed a federal case in this Court, *Dr. John J. Walsh v. California Energy Development, et al.*, Case No. 3:22-cv-00449-JO-BGS (S.D. Cal.) (the "April 2022 federal proceeding"), based upon the same claims that were settled and assigned to Life Advance pursuant to the settlement agreement in this case. ECF No. 390.

Finding that Mr. Walsh had breached several provisions of his settlement agreement with Life Advance by filing lawsuits in both state and federal court arising from the same nucleus of operative facts as the claims he settled, released, and/or assigned to Life Advance in this action, the Court ordered Mr. Walsh to appear at the August 5, 2022 hearing in person to show cause why he should not be (1) sanctioned for breaching the settlement agreement, (2) enjoined from continuing to prosecute the state and federal court actions and fined up to $1,000 per day until he complies, and (3) required to pay Life Advance's attorney fees incurred in bringing the Motion for Order to Show Cause. *See* ECF No. 392. Mr. Walsh appeared for the Show Cause Hearing as scheduled on August 5, 2022, and the Court allowed him to be heard on the record. ECF No. 394. This Order memorializes the Court's ruling at the Show Cause hearing.

## II.   LEGAL STANDARD

Enforcement of a settlement agreement in a federal case, "whether through award of damages or decree of specific performance, is more than just a continuation or renewal of the dismissed suit, and hence requires its own basis for jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 378 (1994). *Accord O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) ("A motion to enforce the settlement agreement [] is a separate contract

---

[1] Although the federal case was filed on April 6, 2022—before the state court case was filed—Mr. Walsh has failed to effect service on any of the Defendants in that case, which is why counsel for Life Advance only recently became aware of it.

dispute requiring its own independent basis for jurisdiction."). The Court retains such ancillary jurisdiction to enforce the settlement agreement where the parties to a settlement make their obligations to comply with the terms of the settlement agreement part of the dismissal order, "either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." *Kokkonen*, 511 U.S. at 381; *see also In re Valdez Fisheries Dev. Ass'n, Inc.*, 439 F.3d 545, 549 (9th Cir. 2006) (explaining that if a district court's dismissal order does not explicitly retain jurisdiction or incorporate the settlement terms, "enforcement of the settlement agreement is for state courts").

Life Advance and Mr. Walsh have agreed from the day they first reached the settlement agreement that the undersigned would retain jurisdiction to enforce it. In the handwritten settlement agreement signed by Mr. Walsh and Mr. Stack on March 5, 2020, the parties included a provision stating, "Magistrate Judge Goddard will resolve all disputes regarding the terms of the formal settlement agreement." ECF No. 191-2 at 12. Consistent with that term, in the parties' formal settlement agreement executed on May 18, 2020, the parties included the following provisions:

> [4.]G.    Magistrate Judge Allison H. Goddard will resolve all disputes between the Parties regarding the terms of the Settlement Agreement;
>
> . . .
>
> 30.    Exclusive Jurisdiction.    The sole and exclusive jurisdiction and venue to enforce or interpret this Agreement shall be in the United States District Court for the southern District of California.
>
> 31.    Waiver of Jury.    The parties hereby waive their right to a trial by jury in any matter related in any way to the interpretation or enforcement of this Agreement. The parties agree that any dispute regarding the interpretation or enforcement of this Agreement shall be determined by United States Magistrate Judge Allison H. Goddard or any other United States Magistrate Judge assigned. [Mr. Walsh and Mr. Stack provided separate signatures/initials specifically approving this provision.]

ECF No. 191-2 at 15, 22.

Not only did the parties include separate provisions in their settlement agreement stating that this Court would retain jurisdiction to enforce the settlement agreement, but the Court also incorporated an express retention of jurisdiction in its amended Order dismissing Walsh from the case on March 25, 2021. *See* ECF No. 237 (Order granting motion to alter or amend the dismissal order to expressly provide that the Court "shall retain jurisdiction over the settlement agreement between Life Advance and Mr. Walsh, and that any disputes arising out of that settlement agreement shall be fully and finally resolved by Judge Goddard."). Therefore, although the federal case is now closed and all claims involving Life Advance and Mr. Walsh have been dismissed, the Court finds it has ancillary jurisdiction to enforce the settlement agreement. *See Flanagan v. Arnaiz,* 143 F.3d 540, 544 (9th Cir. 1998) (concluding the district court had retained jurisdiction to enforce the settlement agreement where "the district court made exactly the sort of express provision described by *Kokkonen*").

Finally, the parties included a choice-of-law provision in the Settlement Agreement stating that the agreement would be governed by California law. ECF No. 191-2 at 20. Therefore, the Court applies California law to its analysis of whether the settlement agreement is enforceable and the available remedies for breach.

## III.   DISCUSSION

As outlined above, by filing suit against Life Advance in both state and federal court in which he asserts claims to the life insurance policy and proceeds at issue in this action, Mr. Walsh has breached several provisions of his settlement agreement with Life Advance, including the general release, the assignment provision, the covenant not to interfere, the covenant not to sue or prosecute, and the provision stating that this Court would have the sole and exclusive jurisdiction to resolve any disputes related to the enforcement or interpretation of the settlement agreement. *See* ECF No. 375-3 at 3-14 (copy of the May 2020 settlement agreement between Mr. Walsh and Life Advance).

Life Advance requests the following relief to remedy Mr. Walsh's breaches of the settlement agreement: (1) an Order for specific performance of the settlement agreement;

(2) injunctive relief in aid of enforcement, including an order directing Mr. Walsh to dismiss the state court action with prejudice and to pay an amount up to $1,000 per day until dismissed, and an injunction preventing Mr. Walsh from filing any new actions in violation of the general release, the assignment provision, and/or the covenant not to sue or prosecute; (3) sanctions against Mr. Walsh in the form of $6,744.98 incurred by Life Advance in enforcing the provisions of the settlement agreement by way of the Motion for Order to Show Cause, plus the amount of additional attorney fees and costs incurred in prosecuting the motion since it was filed; and (4) a reinstatement of the amount of sanctions the Court previously contemplated awarding against Mr. Walsh in connection with the April 6, 2022 Order Regarding Sanctions (ECF No. 348), in which the Court found that Mr. Walsh should be sanctioned for his role in signing and filing false statements with the Court. *See* ECF No. 375 at 1-2. In the alternative, Life Advance asks the Court to require Mr. Walsh to show cause why he should not be held in contempt for failing to dismiss the state court complaint, as he represented to the Court he would do during the May 13, 2022 Status Conference. *Id.* at 2-3.

Before turning to the remedies requested, the Court must address the threshold issue of whether the settlement agreement is enforceable, because to the extent Mr. Walsh has acknowledged that he settled this case at all, he has made various arguments in writing and orally suggesting that he does not believe he is bound by the agreement for one reason or another. Recognizing that Mr. Walsh is proceeding *pro se*, the Court will construe his filings liberally to determine what basis, if any, he posits to justify breaching the settlement agreement.

## A. <u>Whether the Settlement Agreement is Enforceable</u>

The Court first looks to Mr. Walsh's handwritten response to the Court's Order to Show Cause, dated July 31, 2022. ECF No. 393. However, Mr. Walsh does not address the substance of the issue before the Court—his violation of the settlement agreement—in his response. Instead, to the extent it is legible, Mr. Walsh's brief half-page submission addresses the merits of the underlying case, including by challenging as fraudulent the

3:18-cv-02280-DMS-AHG

dissolution of CEDI prior to Mr. Roberts's transfer of the Policy from CEDI to himself, alleging that Pruco stated the transfer of the Policy "was on hold,"[2] and asserting that "Walsh is the owner of the policy" and "[CEDI] is the beneficiary." *See id.* Mr. Walsh repeated similar arguments during the Show Cause Hearing, rejecting the Court's statements that he is bound by the settlement agreement because "the insurance company says that the policy is on hold." *See* ECF No. 396, August 5, 2022 Show Cause Hearing Transcript ("Walsh H'rg Tr.") 14:24-25. But as the Court explained to Mr. Walsh during the hearing, arguments regarding the merits of the underlying interpleader case carry no weight here. Mr. Walsh released or otherwise assigned all claims to the proceeds of the Policy when he settled with Life Advance on March 5, 2020. Therefore, unless Mr. Walsh can establish that the settlement agreement is subject to rescission or otherwise unenforceable, he is bound by its terms and cannot continue to prosecute his claims to the Policy proceeds in collateral litigation.

Thus, again being mindful of the Court's obligation to construe Mr. Walsh's filings liberally, the Court will next examine and consider whether he has presented any argument that the settlement agreement is not enforceable.

In Mr. Walsh's state court complaint, the only provision of the settlement agreement

_____

[2] Although this issue is not relevant to the enforceability of the settlement agreement between Life Advance and Mr. Walsh, the Court notes for the sake of clarity that one of the issues in the underlying interpleader action is whether Pruco had the right to transfer ownership of the Policy from CEDI to Mr. Roberts, whom CEDI accuses of orchestrating a fraudulent scheme prior to his death to wrongfully transfer ownership of and beneficial rights to the Policy to himself, and then subsequently to Life Advance. *See, e.g.*, ECF No. 313-1 at 1-14 (CEDI's summary judgment motion explaining its theory of the case). Before the transfer to Roberts was accomplished, counsel for Pruco had represented that the transfer request was "on hold" due to competing claims to the Policy. *See, e.g.*, ECF No. 151-2 at 72, Ex. M to Voelker/Nicholson Joint Opposition to Life Advance's Motion for Summary Judgment (text message from Ms. Fair to Mr. Nicholson dated August 3, 2018, stating "Policy Ownership has not changed due to competing claims."); 75 (email from Ms. Fair to Mr. Nicholson dated August 4, 2018, stating "My understanding is that the CEDC/Roberts Policy is subject to a litigation hold.").

that he explicitly references is ¶ 33, which provides:

> 33.   <u>Interpretation</u>.  The parties agree that each has had an equal hand in drafting this Agreement, and the rule of construction of contracts which requires that ambiguities be resolved against the drafting party shall have no force or effect.

ECF 191-2 at 23.

In the state court complaint, Mr. Walsh argues that an "act of fraud was committed" when his attorney, Elliott Kanter, signed the settlement agreement including this provision, because Mr. Walsh felt the agreement "was one sided and not a fair agreement at all" but he "was told that Life Advance['s] attorney did the drafting of the agreement." *See* ECF No. 375-3 at 19. Mr. Walsh also provided similar testimony at the Show Cause hearing, complaining that that provision was not accurate because the agreement was drafted by counsel for Life Advance. *See* Walsh H'rg Tr. 12:8-13:11.[3]

Elsewhere in the state court complaint, Mr. Walsh expands on this argument:

> Adding insult to injury, Walsh['s] last attorney of record Elliott [Kanter], let Walsh down by selling him out for a mere $36,000. Walsh was asked to sign an agreement in which he would give up his claim to the policy in exchange for $50,000 settlement agreement. Walsh was told that if he did not sign the agreement, he would be responsible for all attorney fees accumulated throughout the proceedings. Walsh reminds the Court that this was the same

---

[3] THE COURT: This – you made a contract –

MR. WALSH: I didn't do that and my attorney didn't do that. That was – that was done by whatever the name of the company is [Life Advance]. It's different now.

THE COURT: Are you saying that's not your signature? . . . Because you previously testified, I believe, that is your signature.

MR. WALSH: It says it was jointly done by both law firms.

THE COURT: That doesn't matter; is that your signature?

MR. WALSH: Why doesn't it matter? . . . I looked at that [provision] and that's why I signed it.

tactic used on him when he challenged it and had a $70,000 attorney fees judgment set aside with good cause shown. Feeling pressured Walsh signed the document, yet he only did so because he read the last page in which attorney [Kanter] stated that he, Elliott [Kanter] READ, HELPED DRAFT and AGREED WITH THE CONTENTS THEREIN. Walsh informs this Court that this was the furthest from the truth. Once the settlement agreement is looked at for truthfulness, it is shown that: 1) [Kanter] never participated in the drafting of the agreement, making the document null and void; 2) Walsh has never supplied a declaration attesting to all of the lopsided terms drawn up by the parties from the other [] side, making the document null and void; 3) Walsh was never sent a $50,000 check, making the document null and void; 4) Walsh was led to believe in terms that he did not agree with and felt pressured and threatened to sign an agreement that he didn't want to sign. Due to the fraud, misrepresentations, perjured statements, and [outright] lies, this Court should be compelled to deny the settlement agreement to stand setting aside the agreement in total.

ECF No. 375-3 at 40.

The Court will examine each of these arguments to determine whether Mr. Walsh has provided any basis for finding the settlement agreement unenforceable.

> i.   *Whether the agreement is unenforceable because Mr. Walsh's attorney did not participate in drafting it*

First, Mr. Walsh has provided no basis for his claim that Mr. Kanter did not participate in drafting the settlement agreement. But even assuming it is true that counsel for Life Advance is the sole drafter of the agreement, that fact alone would not render the agreement null and void. The purpose and function of the "Interpretation" provision in ¶ 33 of the agreement is to eliminate the typical rule of contract construction that any ambiguities in a contract are construed against the drafter. *See, e.g. Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (discussing and applying "the common-law rule of contract interpretation that a court should construe ambiguous language against the interest of the party that drafted it"); *Victoria v. Superior Ct.*, 710 P.2d 833, 835 (Cal. 1985) (stating that "ambiguities in standard form contracts are to be construed against the drafter.") (citations omitted). Therefore, even if the Court were to

find this provision invalid (and to be clear, there is no basis for doing so), that would not render void the settlement agreement as a whole. It would serve only to restore the typical rule, such that any ambiguities in the contract would be construed in Mr. Walsh's favor. But Mr. Walsh has pointed to no ambiguities in the settlement agreement. Rather, Mr. Walsh seems to be arguing that he only signed the settlement agreement because he read that provision and believed his attorney had his best interests in mind, and thus if the representation therein that both parties to the settlement agreement "had an equal hand in drafting this Agreement" is untrue, that would amount to fraud and entitle him to rescind the contract. *See, e.g.*, *Zhang Xudong v. Flecke*, No. CV172876CASRAOX, 2017 WL 4179872, at *8 (C.D. Cal. Sept. 18, 2017) (applying California law and explaining, "[f]raud which was the inducing cause of the execution of the contract renders the whole instrument vulnerable. Thus, it is well established that a party to an agreement induced by fraudulent misrepresentations or nondisclosures is entitled to rescind.") (quotations, alterations, and internal citations omitted); *Citicorp Real Est., Inc. v. Smith*, 155 F.3d 1097, 1103 (9th Cir. 1998) ("Under California law, a party to a contract has grounds to rescind the contract if the consent of the party seeking rescission was obtained through fraud."). The Court finds no merit in this argument.

All material terms of the settlement agreement were agreed upon during the March 5, 2020 ENE, and the formal written agreement does not materially alter any of those terms. Mr. Walsh actively participated in those settlement negotiations, clearly understood the terms of the settlement to which he agreed, and signed the preliminary settlement term sheet on the day of the ENE without relying on any representation that Mr. Kanter had had an equal hand in drafting it. Therefore, the Court is not persuaded that Mr. Walsh would not have signed the settlement agreement if not for his understanding that his attorney had had an equal hand in drafting it. For that reason, whether or not the representation made in ¶ 33 of the formal settlement agreement that each party had an equal hand in drafting it is accurate, Mr. Walsh has failed to provide any basis for setting aside the contract as having been procured by fraud, because he has not sufficiently shown that

he relied on that provision of the contract when signing it or even that the provision was material. *See Contra Costa Cty. Title Co. v. Waloff*, 7 Cal. Rptr. 358, 362 (Cal. Ct. App. 1960) ("One seeking rescission on account of fraud must be actually deceived by misrepresentation of a material fact and the other party must have intended to deceive by a misrepresentation of such material fact. Further, the party seeking to rescind must rely upon the fraudulent representation to his injury and damage before he can have the contract rescinded."). Therefore, the Court rejects this argument.

ii.   *Whether the settlement agreement is unenforceable because it does not include a declaration from Mr. Walsh*

Second, Mr. Walsh complains that he did not supply a declaration attesting to the terms of the agreement. That is not grounds to find the contract unenforceable. Indeed, the Court has trouble even parsing the meaning of this argument because of how unusual it would be to attach a declaration to a settlement agreement. Nor would it have served any purpose to have done so. The agreement contains an integration clause stating that it "represents the entire agreement of the Parties hereto with respect to the subject matter hereof and supersedes any prior understandings or agreements between them with respect thereto." ECF No. 191-2 at 20. The agreement also contains its own Recitals of Fact at the outset. *Id.* at 14-15. Mr. Walsh's signature on the settlement agreement suffices to bind him to the terms of the agreement, and due to the integration clause, any supplemental declaration would have no force or effect to alter the agreement. The Court thus rejects this argument.

iii.   *Whether the settlement agreement is unenforceable because Mr. Walsh was not paid the settlement funds*

Third, Mr. Walsh states he "was never sent a $50,000 check, making the document null and void." This is a misrepresentation. While it is true that Mr. Kanter's 25% contingency fee and legal costs were deducted from the $50,000 settlement amount pursuant to Mr. Walsh's fee agreement with his attorney, Mr. Kanter sent Mr. Walsh a check for the remaining $37,332.69. *See* ECF No. 375-3 at 78 (copy of Mr. Kanter's client

trust account details regarding the Walsh settlement payment, showing that Mr. Walsh was issued a check for $37,332.69 from the account on July 30, 2020). However, Mr. Walsh has repeatedly refused to cash the check, apparently believing that his refusal to do so is an effective way to void the settlement agreement. *See, e.g.*, ECF No. 215 at 13 (Declaration from Mr. Walsh stating, "I returned the settlement check to my previous attorney Elliott Kanter and told him to return the settlement money. . . . I no longer have any of the settlement money and I never cashed the check I received"); ECF No. 375-3 at 82 (Mr. Walsh's May 27, 2021 letter to California Insurance Commissioner Ricardo Lara, stating, "I never cashed the check." The copy of the letter also has handwritten notes in Mr. Walsh's handwriting, stating, "50,000 made out to John Walsh sent to my attorney Elliott Cantor [sic]. The check was sent to my attorney Elliott Cantor, He never called me. LA [Life Advance] knew if he got the check, it would go through."). Indeed, the Court directed Mr. Kanter to send Mr. Walsh yet another check to pay out his settlement funds after the May 13, 2022 hearing in this case regarding Mr. Walsh's state court complaint, when Mr. Walsh yet again attempted to avoid his settlement obligations by stating he had never cashed the check. *See* ECF No. 360 (Court's Minute Entry documenting that "Mr. Kanter stated that a check for the settlement proceeds from Mr. Walsh's settlement with Life Advance in this action would be re-sent to Mr. Walsh by mail today (Mr. Walsh previously returned a check for his settlement proceeds to Mr. Kanter)"). Mr. Walsh's continuing refusal to accept the settlement funds is not a valid basis for rescission of the agreement.

> *iv.  Whether the settlement agreement is unenforceable due to fraud or duress*

Mr. Walsh's final argument is that he "was led to believe in terms that he did not agree with and felt pressured and threatened to sign an agreement that he didn't want to sign." Thus, he argues that "[d]ue to the fraud, misrepresentations, perjured statements, and [outright] lies," the Court should "set[] aside the agreement in total." This argument requires a more thorough examination, because the law is clear that consent to a settlement agreement "obtained through duress, menace, fraud, or undue influence, exercised by or with the connivance of the party as to whom he rescinds" is a valid basis to rescind the

agreement. Cal. Civ. Code § 1689(1). "Alternatively, if the party with whom a plaintiff seeks to rescind is not responsible for the duress, the plaintiff must allege that the party 'knows that it has taken place and takes advantage of it.'" *Zone Sports Ctr. LLC v. Red Head Inc.*, No. C 11-00634 JSW, 2011 WL 3862007, at *5 (N.D. Cal. Sept. 1, 2011) (quoting *Chan v. Lund*, 116 Cal. Rptr. 3d 122, 134 (Cal. Ct. App. 2010)).

However, Mr. Walsh has failed to show that he signed the settlement agreement under duress or undue influence here, or that his signature was obtained through "menace" or "fraud." As the Court discussed in its previous order enforcing the settlement agreement, the undersigned is in a unique position to evaluate the veracity of such allegations, having personally facilitated the ENE during which the settlement was initially reached:

> Before the formal settlement agreement was signed on May 18, 2020, the basic terms were first agreed upon by Life Advance and Mr. Walsh during the March 5, 2020 Early Neutral Evaluation Conference ("ENE") before the undersigned. During the ENE, Mr. Walsh was represented by counsel and gave no indication that he was not of sound mind or otherwise did not understand or consent to the terms of the agreement. Mr. Walsh's attorney ably explained the terms of the agreement to him before they were committed to writing in a preliminary term sheet that was signed that day, which included the term requiring Mr. Walsh to cooperate with Life Advance in the prosecution of its claim to ownership of the policy, including but not limited to providing written declarations regarding Life Advance's ownership of all rights to the proceeds. *See* ECF No. 191-2 at 11-12. Mr. Walsh has never asserted that he did not understand the terms of the agreement, that the agreement was not voluntarily made, or otherwise argued that the terms are unenforceable against him. Rather, he has expressed disappointment with the terms of the agreement after the fact. Buyer's remorse is not grounds for finding the settlement agreement unenforceable. *See, e.g.*, *Holt v. MacArthur*, No. 11CV1502-GPC-KSC, 2014 WL 940327, at *20 (S.D. Cal. Mar. 10, 2014); *Khadavi v. Stalgi*, Inc., No. CV 20-7948-RSWL-EX, 2021 WL 929099, at *7 (C.D. Cal. Mar. 10, 2021) ("Plaintiff's allegation that the settlement agreement was 'not fairly made,' without more, merely indicates buyer's remorse, which does not constitute a basis for rescinding a settlement agreement.") (citing *Tarpy v. County of San Diego*, 110 Cal. App. 4th 267, 279 (2003)).

ECF No. 262 at 8-9.

The Court remains confident that Mr. Walsh understood the terms of the settlement and agreed to them of his own free will during the ENE. Mr. Walsh's submissions to the Court indicate that after reaching the settlement, he simply came to believe he should not have settled his claims, based on his review of portions of the California Insurance Code that convince him he would have ultimately prevailed in the interpleader action and been deemed the owner of the Policy with the right to collect the entire amount of the Policy proceeds. *See, e.g.*, ECF No. 375-3 at 19-20 (Mr. Walsh arguing in his state court complaint that he is entitled to the proceeds of the Policy because he made the premium payments, and contending that his attorney did not sufficiently advocate for his interests by allowing Mr. Walsh to settle despite his knowledge of the premium payments); 82 (May 27, 2021 Walsh letter to Insurance Commissioner Lara stating, "The person who pays the premiums owns the policy"). For the same reasons explained in its prior Order, the Court reiterates that Mr. Walsh may not set aside the settlement agreement simply because he no longer likes the deal he made.

As for whether there is any evidence of duress or menace, the Court notes that Mr. Walsh has unequivocally disavowed the false accusations he previously made in filings with the Court against counsel for Life Advance and Mr. Stack, including that they "berated" him after the settlement was reached, tried to suborn perjury from him by getting him to sign false declarations, and threatened him that they would "sink [him] legally and financially" if he did not sign the declarations to help them win the case. *See* ECF No. 215 at 10-14. After Mr. Walsh admitted these statements were untrue during the June 1, 2021 hearing on his Motion for Order to Show Cause, they were the subject of multiple Show Cause hearings before the Court, leading the Court to conclude that Mr. Walsh should be sanctioned for filing them pursuant to Rule 11(b)(1), the Court's inherent powers, and the attorney fee provision of his settlement agreement with Life Advance. *See* ECF Nos. 252, 262, 348. Although Mr. Walsh has not attempted to revive any of these false accusations here, the Court points to Mr. Walsh's history of filing false statements with the Court to avoid his obligations under the settlement agreement to highlight why his newly raised

allegations of "fraud" and "misrepresentations" ring hollow.

Mr. Walsh also alleges in his state court complaint that he felt "pressured" to sign the settlement agreement because he "was told that if he did not sign the agreement, he would be responsible for all attorney fees accumulated throughout the proceedings." ECF No. 375-3 at 40. Even assuming for the sake of argument that it is true Mr. Walsh felt pressured to sign the agreement by Mr. Kanter for fear of having to pay Mr. Kanter additional attorney fees if the case proceeded, that allegation does not provide a valid ground for rescission. Mr. Walsh has not alleged "duress, menace, fraud, or undue influence, *exercised by or with the connivance of the party as to whom he rescinds*" (i.e., Life Advance) by way of this accusation. Rather, he has alleged only that he felt pressured by his attorney to sign the agreement. That is insufficient. To attempt to rescind the contract with Life Advance on the basis that he signed it under economic duress as a result of his attorney's threat of additional legal fees, Mr. Walsh must show that Life Advance knew that such duress had taken place and took advantage of it by enforcing the contract. *See Chan*, 116 Cal. Rptr. 3d at 134 (finding a litigant "presented no legal grounds for rescission" of a settlement agreement, even assuming that he settled under economic duress as a result of his attorney's threat to withdraw as counsel, because "the attorney was neither a party to the Settlement nor 'jointly interested' with any contracting party" and "there is nothing in the record to suggest that defendants in any way connived with [his] attorney in allegedly exerting such pressure.").

In sum, Mr. Walsh has not presented any valid basis to rescind his settlement agreement with Life Advance. Because the Court finds the settlement agreement between Mr. Walsh and Life Advance to be enforceable, it now turns to the question of how to enforce it.

### B. Propriety of Injunctive Relief to Enforce the Settlement Agreement

As discussed, Life Advance asks the Court to issue an Order for specific performance of the settlement agreement, and to issue injunctive relief in aid of enforcement, including requiring Mr. Walsh to dismiss the pending actions with prejudice

and to fine him $1,000 per day until he does so, and prohibiting him from making any future attempts to relitigate the claims he has released or assigned in this action. *See* ECF No. 375 at 2.

Ordinarily, a Magistrate Judge may not issue injunctive relief. *See* 28 U.S.C. § 636(b)(1)(A). However, such restriction does not apply where the parties have consented to the Magistrate Judge's jurisdiction, as Mr. Walsh and Life Advance have done here by way of entering into a settlement agreement that provides for the undersigned Magistrate Judge to have plenary authority to resolve any dispute regarding the interpretation or enforcement of their agreement. ECF No. 375-3 at 13. Therefore, because the parties have consented to the undersigned to exercise jurisdiction over the present dispute, the Court is able to issue injunctive relief if it finds such relief appropriate to address the dispute. *See, e.g.*, *Irwin v. Mascott*, 370 F.3d 924, 929-31 (9th Cir. 2004) (finding parties bound by a magistrate judge's grant of injunctive relief and subject to the magistrate judge's civil contempt order, based on their consent to adjudication by the magistrate judge, even where one of the persons subject to the contempt order had not personally consented to magistrate judge jurisdiction but had been virtually represented in the litigation by the named defendants); *see also Anderson v. Woodcreek Venture Ltd.*, 351 F.3d 911, 914 (9th Cir. 2003) (explaining that "[c]onsent" is "the touchstone of magistrate judge jurisdiction" pursuant to 28 U.S.C. § 636); *Roell v. Withrow*, 538 U.S. 580, 581 (2003) (explaining that "§ 636(c)(1), which is the font of magistrate judge authority, speaks only of 'the consent of the parties,' without qualification as to form, and § 636(c)(3) similarly provides that '[t]he consent of the parties allows' a full-time magistrate judge to enter a final, appealable judgment of the district court."). Thus, satisfied that the parties' grant of consent allows the undersigned to issue injunctive relief as appropriate, the Court turns to whether there are any other jurisdictional or other barriers to issuing such relief.

Pursuant to the Anti-Injunction Act, a federal court may not enjoin proceedings in a state court "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The last of

these exceptions is also called the "relitigation exception," because it is "designed to permit a federal court to prevent state litigation of an issue that previously was presented to and decided by the federal court." *Flanagan*, 143 F.3d at 546 (citing *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 147 (1988)).  In *Flanagan*, the Ninth Circuit held that the relitigation exception applied to bar a state court proceeding where the district court expressly retained jurisdiction to construe and enforce a settlement agreement. *Id.* at 545; *see also Chevron U.S.A., Inc. v. Sheikhpour*, No. CV074451PSGAGRX, 2011 WL 13183009, at *2 (C.D. Cal. Apr. 11, 2011), *aff'd*, 469 F. App'x 593 (9th Cir. 2012) (discussing and applying the rule from *Flanagan*).

The *Flanagan* court also discussed that under such circumstances, the second exception in the Anti-Injunction Act—allowing a federal court to enjoin a state court action "where necessary in aid of its jurisdiction"—also applies, because state court litigation of matters that have already been resolved via settlement in the federal case "would pose a significant risk of frustrating the district court's jurisdiction over the consent judgment." *Flanagan*, 143 F.3d at 545 (quoting *United States v. Am. Soc'y of Composers (In re Karmen)*, 32 F.3d 727, 731 (2d Cir. 1994)). Therefore, even if no actual conflict between the federal court judgment and the state court judgment is possible or threatened, a federal injunction of state court proceedings pursuant to the relitigation exception "could still be proper if res judicata would bar the state court proceedings." *Blalock Eddy Ranch v. MCI Telecommunications Corp.*, 982 F.2d 371, 375 (9th Cir. 1992). *See also W. Sys., Inc. v. Ulloa*, 958 F.2d 864, 870 (9th Cir. 1992) (explaining that in the Ninth Circuit, the relitigation exception is held to apply "where a prior federal decision 'necessarily precludes' a certain result even if that result was not itself actually litigated").

Similarly, with respect to the federal action, federal courts have the power pursuant to the All Writs Statute, 28 U.S.C. § 1651, to enjoin defendants in an interpleader action from bringing later proceedings regarding the same claim in federal court. *Trustees of ILWU-PMA Pension Plan v. Coates*, No. C-11-3998 EMC, 2013 WL 556800, at *7 (N.D. Cal. Feb. 12, 2013) (citing *N.Y. Life Ins. Co. v. Deshotel*, 142 F.3d 873, 879 (5th Cir. 1998)

("Under the All Writs Statute, a federal court has the power to enjoin a party before it from attempting to relitigate the same issues or related issues precluded by the principles of res judicata and collateral estoppel in another federal court.")).

Thus, the Court must look to the state court action and the April 22 federal proceeding to determine whether Mr. Walsh's claims asserted in those actions are barred by the doctrine of res judicata. Both complaints and the attached exhibits are identical except for the following differences: (1) Mr. Walsh's former attorney Elliott Kanter is named as a defendant in the state court complaint, but not in the federal complaint; (2) the preamble sections of the complaints (*compare* ECF No. 375-3 at 17 *to* ECF No. 390 at 10) contain different wording, but neither section is substantive; (3) the federal complaint contains a separate one-page "Causes of Injury" section after the preamble but before the remainder of the complaint (ECF No. 390 at 11), which does not appear anywhere in the state court complaint; (4) the state court complaint contains a separate "Prayer [for Relief]" section prior to the Exhibits, while the federal complaint contains no such section; and (5) some sections of each complaint, though identical, are organized in a different order in each complaint (*compare* ECF No. 375-3 at 31-35 *to* ECF No. 390 at 12-14). Because the complaints are so similar, the Court finds it appropriate to analyze them together.

Parsing the pleadings is no easy task, given that Mr. Walsh filed both complaints without the assistance of counsel. Nonetheless, having reviewed both complaints in depth, the Court finds the most straightforward way to construe the pleadings is to separate the claims into three categories: those claims that are directly related to Mr. Walsh's claim to the Policy proceeds, those claims related to Mr. Walsh's challenge to the validity of the settlement agreement, and those claims related to Mr. Walsh's former attorney Mr. Kanter's representation of him in this action.

*i.   Claims related to Mr. Walsh's claim to the Policy proceeds*

A subsequent action is barred by res judicata if it "arises from the same 'transaction, or series of transactions' as the original action[,]" which in turn depends on "whether they are related to the same set of facts and whether they could conveniently be tried together."

*Ulloa*, 958 F.2d at 870 (quoting Restatement (Second) of Judgments § 24(1) (cited with approval in *Nevada v. United States*, 463 U.S. 110, 130-31 n.12 (1983)). *See also Sheikhpour*, 2011 WL 13183009, at *4 ("Ninth Circuit law is clear that whether two claims are identical depends on whether they arise from the same transactional nucleus of facts. Whether two suits arise out of the same transactional nucleus depends upon whether they are related to the same set of facts and whether could conveniently be tried together.") (internal quotations and citations omitted).

Both the state court action and the April 2022 federal proceeding filed by Mr. Walsh arise from the same transaction or series of transactions as the instant case, insofar as both complaints seek to recover the Policy proceeds that constitute the *res* underlying this entire interpleader action. The vast majority of Mr. Walsh's claims in both actions arise from the same facts that form the basis of his claim to those proceeds. To illustrate, in the federal action, Mr. Walsh begins his "Causes of Injury" section at the outset of the complaint by stating, "Plaintiff complaints to this Court that California Energy Development Inc. . . . declares to be the owner of Defendant JAMES ROBERTS Key-Man life insurance policy and that CEDI is the only owner to the policy and the only beneficiary and no one else has any claim to this policy." ECF No. 390 at 11. Similarly, in both the state court and federal court complaints, in the "Cause of Action" section, Mr. Walsh states, "A dispute exists, and now is over many parties as to the rightful owner of the $1,000,000 life insurance policy. Plaintiff prays that this Court order the defendants to dismiss their claims to the policy and award it to the one who made the premium payments on that policy." ECF No. 375-3 at 22; ECF No. 390 at 19. Claims regarding the ownership of the Policy are identical to the claims resolved in this interpleader action and are plainly barred by res judicata.

Other claims in Mr. Walsh's complaints, while not direct claims to the Policy proceeds, are also foreclosed by res judicata. The Court will go through each of those claims in turn.

First, Mr. Walsh argues that Defendants Mickey Nicholson and Jason Voelker are guilty of "financial elder abuse" based on their solicitation of $50,000 from Mr. Walsh to

pay the policy premiums on Policy. Although the interpleader action did not involve claims of elder abuse, these claims are nonetheless barred by res judicata because they arise from the same transactional nucleus of facts underlying the interpleader action—that is, Mr. Walsh's claims of "financial elder abuse" are based on Mr. Nicholson and Mr. Voelker's alleged solicitation of Mr. Walsh to pay the Policy premiums in exchange for one-third of the Policy proceeds—the same nucleus of facts giving rise to his claim to the proceeds in the interpleader action. Moreover, in the settlement agreement, Mr. Walsh assigned to Life Advance "any and all claims and rights Walsh has or may have against California Energy, Pruco, and any other person or entity based upon the allegations made by Walsh in the [interpleader action] related to his payment or transfer of money or other consideration to or for the benefit of California Energy, Timothy Bryson, James Roberts, Pruco or any related person or entity, to prosecute such claims and to assert such rights in his name or otherwise." ECF No. 375-3 at 5, ¶ 8. Thus, even if Mr. Walsh's claims based on his premium payments were not precluded by res judicata, he has no right to bring them in his own name because he assigned all such claims to Life Advance.

Second, Mr. Walsh makes reference throughout both complaints to claims of fraud against all named defendants, arguing in pertinent part "that the defendants committed corporate fraud and outright fraud" and "this is a case about misrepresentations, deceit made with the intent to defraud plaintiff on a part of the million dollar policy." ECF No. 375-3 at 21, ECF No. 390 at 18. Similarly, Mr. Walsh purports to bring a claim for "intentional interference with contract" in both complaints, arguing that he had a contract with the CEDI parties to give him one-third of the Policy proceeds based on his payment of the premiums. *See* ECF No. 375-3 at 23-27; ECF No. 390 at 20-22. In the "Conclusion" section of both complaints, Mr. Walsh also states in a cursory fashion that the named defendants "had a fiduciary duty to the plaintiff" and that they "committed unfair business practices[.]" ECF No. 375-3 at 29; ECF No. 390 at 23.

As the Court concluded with respect to the elder abuse claim, although Mr. Walsh did not bring or settle any claims for fraud, intentional interference with contract, or unfair

business practices in the instant case,[4] all such claims are precluded because they arise from the same transactional nucleus of facts as the claims that have been resolved in the interpleader action and released by Mr. Walsh or otherwise assigned to Life Advance in the settlement agreement. These claims are simply other avenues that Mr. Walsh is using to try to pursue the Policy proceeds, despite releasing and assigning all such claims in the settlement agreement. Thus, the doctrine of res judicata applies to bar Mr. Walsh's attempt to revive all of his claims to the Policy proceeds in the state court action and in the April 2022 federal proceeding, and the Court has jurisdiction to enjoin him from maintaining all such claims and from bringing such claims in the future.

   ii.  *Claims related to challenging the validity of the settlement agreement*

   Certain portions of Mr. Walsh's complaints in the state court action and the April 2022 federal proceeding are aimed at challenging the validity of the settlement agreement itself, and thus arguably state a claim for rescission[5]—a claim that is not identical to the claims that were resolved in the underlying case. The doctrine of res judicata would not typically apply to bar a litigant's later claim for rescission of the settlement agreement resolving the substantive claims at issue in the case. However, in this case, Mr. Walsh expressly agreed that all disputes related to the enforcement or interpretation of the

_____

[4] With respect to Mr. Walsh's reference to the defendants' "fiduciary duty," the Court construes this as a claim against his former attorney, Mr. Kanter, based on other portions of the pleadings regarding Mr. Kanter's representation of Mr. Walsh in this action. Mr. Walsh's claims against Mr. Kanter are addressed in more detail below.

[5] As discussed, due to Mr. Walsh's *pro se* status, it is difficult to parse his pleadings, and he never expressly invokes the term "rescission" in either complaint. Nonetheless, there is a separate "Statement of Facts" attached as an Exhibit to both complaints, which is a printout of an email dated September 21, 2021 at 7:26 p.m. that is both from and to the domain "lawkingdom@aol.com," in which Mr. Walsh contends that the settlement agreement is "null and void" for the four enumerated reasons quoted and discussed *supra* pp. 11-18. *See* ECF No. 375-3 at 40; ECF No. 390 at 27. Construing the pleadings liberally, the Court treats these arguments as a claim for rescission.

settlement agreement would be determined by the undersigned Magistrate Judge. Therefore, as in *Flanagan*, Mr. Walsh's claims for rescission still fall "squarely within the express exceptions of the Anti-Injunction Act," involving "an entirely unjustified attempt" by Mr. Walsh "to evade [his] own agreement, incorporated in a court order and judgment, to submit disputes and enforcement proceedings regarding [his] settlement to the federal district court." 143 F.3d at 545-46. Even if Mr. Walsh had a valid basis for challenging the enforceability of the settlement agreement, he is required to bring such challenges in this Court, and the Court has jurisdiction to enjoin his efforts to challenge the agreement in separate proceedings.[6]

> iii.   Claims against Mr. Kanter

The only remaining claims in Mr. Walsh's complaints are aimed at his former attorney in this action, Elliot Kanter. Significantly, the Court's analysis regarding Mr. Walsh's claims related to the Policy proceeds or to challenging the validity of the settlement agreement does not extend to Mr. Walsh's attempt to assert a claim against his former attorney, Mr. Kanter.

Although Mr. Kanter is only named as a defendant in the state court complaint, in both complaints, Mr. Walsh invokes his Sixth Amendment right to counsel and labels "Exhibit O" of each complaint "Proof of Ineffective Assistance of Counsel on Kanter." *See* ECF No. 375-3 at 37; ECF No. 390 at 24. In the body of the state court complaint, Mr. Walsh accuses Mr. Kanter of violating his "duty to his client to be an advocate" and "not to allow the defendants['] attorney [to] draft an agreement in which [Kanter] had little if any involvement at all." *See* ECF No. 375-3 at 19-20. Additionally, as noted above, Mr. Walsh references the defendants' "fiduciary duty" to Mr. Walsh in the "Conclusion" section of both complaints. ECF No. 375-3 at 29; ECF No. 390 at 23.

---

[6] Moreover, because the Court has construed Mr. Walsh's filings liberally here, his arguments that might form the basis of a claim for rescission have already been duly considered herein, and have been rejected as without merit.

While Mr. Walsh's attempt to sue his former attorney is certainly *related* to the settlement agreement, Mr. Walsh is not obligated to bring such claims before this Court pursuant to the terms of the agreement affording this Court exclusive jurisdiction over claims related to its enforcement and interpretation, because Mr. Kanter is not a party to the settlement agreement itself. Nor do such claims arise from the same transactional nucleus of facts as the competing claims to the Policy proceeds that were resolved through settlement in this interpleader action. Therefore, the Court lacks jurisdiction to enjoin Mr. Walsh's claims against his former counsel. Mr. Walsh shall thus not be precluded from bringing any future suits against Mr. Kanter related to Mr. Kanter's representation of Mr. Walsh. However, because both the state court action and the April 2022 federal proceeding primarily concern Mr. Walsh's claim to the Policy proceeds, and the relief he seeks in both cases is premised entirely on that claim, he will be enjoined from maintaining either suit.

In finding that the Court lacks jurisdiction to enjoin Mr. Walsh from suing his former attorney, the Court expresses no opinion regarding the viability of Mr. Walsh's claims against Mr. Kanter.

Based on the foregoing analysis, the Court finds it has jurisdiction to enforce the settlement agreement between Mr. Walsh and Life Advance by enjoining both the state court action in the Superior Court of California for the County of San Diego, Case No. 37-2022-00015515-CU-MC-CTL, and the April 2022 federal proceeding filed in this Court, Case No. 3:22-cv-00449-JO-BGS. Further, the Court finds that an injunction is warranted because Life Advance would suffer irreparable harm if Mr. Walsh were permitted to relitigate his claim to the Policy proceeds that have been resolved in this action. *See Trustees of IL WU-PMA Pension Plan v. Peters*, 660 F. Supp. 2d 1118, 1145 (N.D. Cal. 2009) ("A party seeking an injunction against relitigation must make the showing necessary for the issuance of any injunction, that is, serious and irreparable harm. This standard is usually met, however, where there is a likelihood of costly and judicially wasteful relitigation of claims and issues that were already adjudicated in federal court.") (citing *Aristud–Gonzalez v. Gov't Dev. Bank for P.R.*, 501 F.3d 24, 27 (1st Cir. 2007)

("Injunctive relief incident to an interpleader action is also common—the whole purpose being to avoid inconsistent results in separate lawsuits")) (internal citation and other citation omitted). *See also, e.g.*, *Coates*, 2013 WL 556800, at *7-8 (issuing an injunction in an interpleader action pursuant to the All Writs Statute to enjoin a defendant from bringing future claims to the interpled funds on the basis that "the [p]laintiffs would suffer irreparable harm if faced with future claims to the interpled funds brought by [the defendant] after this action has been adjudicated against her" because "relitigation of these issues 'would be judicially wasteful and raise the possibility of inconsistent results. It would also defeat the purpose of the [plaintiffs'] interpleader action.'") (quoting *Peters*, 660 F. Supp. 2d at 1145); *Trustmark Ins. Co. v. Barragan*, No. CV 17-7326 FMO (SKX), 2018 WL 5116459, at *5 (C.D. Cal. Jan. 30, 2018) (issuing injunctive relief from relitigation of claims that had been resolved in an interpleader action in federal court because "the court is persuaded that [the plaintiff] would suffer irreparable harm if faced with future claims to the interpleaded funds. Relitigation would defeat the purpose of [the plaintiff's] interpleader action and result in waste.").

The Court will thus issue an injunction requiring Mr. Walsh to dismiss those suits and prohibiting him from bringing any future claims in litigation that are precluded by his settlement agreement with Life Advance, to include all claims arising from the same transactional nucleus of facts underlying the interpleader action, all claims that Mr. Walsh released or assigned in the settlement agreement, and/or all claims related to the enforcement or interpretation of the settlement agreement.

## C. Propriety of Per Diem Fine of $1,000

Life Advance has requested that the Court order Mr. Walsh to pay up to $1,000 per day to compel him to dismiss the state court action. Per diem fines such as the one requested by Life Advance are a form of civil contempt sanctions, "or those penalties designed to compel future compliance with a court order," which are "considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon notice and an opportunity to be heard. Neither a jury trial nor proof beyond a

reasonable doubt is required." *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 827 (1994).

Like the power to issue injunctive relief, a magistrate judge's authority to issue civil contempt sanctions is statutorily limited to those cases where the magistrate judge "presides with the consent of the parties" under 28 U.S.C. § 636(c). 28 U.S.C. § 636(e)(4). For the same reasons explained above, the Court finds that Mr. Walsh's consent to the undersigned's sole and exclusive jurisdiction to enforce and interpret the settlement agreement permits the undersigned to issue such sanctions here.

Mr. Walsh has had adequate notice and opportunity to be heard on whether such sanctions should be imposed. The Court warned Mr. Walsh in its Order to Show Cause that he was required to show cause "why the Court should not grant Life Advance's requests for[,]" *inter alia*, "injunctive relief in aid of enforcement, including an order directing Mr. Walsh to dismiss the state court and federal court actions with prejudice and pay an amount up to $1,000 per day until he has done so." ECF No. 392 at 3-4. Therefore, Mr. Walsh had notice prior to the hearing that he might face such sanctions if he did not voluntarily dismiss state court action and the April 2022 federal proceeding. During the Show Cause Hearing, the Court expressed that it was inclined to order Mr. Walsh to pay a fine of $1,000 per day until he dismissed the state court action and the April 2022 federal proceeding. *See* Walsh H'rg Tr. 15:12-15 (the Court stating to Mr. Walsh, "[Y]ou'll see my order and you'll act accordingly. You'll make your decision. You can pay $1,000 a day and keep these suits up, or you can dismiss them. It's up to you"). Mr. Walsh has continued to refuse to dismiss either lawsuit, and he has provided no justification for his flagrant and continued breach of the settlement agreement he reached with Life Advance.

Nonetheless, the Court finds it premature to issue contempt sanctions at this juncture, because Mr. Walsh's refusal to dismiss the state court action and the April 2022 federal action is not yet in violation of a Court order. Mr. Walsh shall first be given an opportunity to comply with this Order by dismissing both the state court action and the April 2022 federal proceeding.

**If Mr. Walsh does not dismiss both actions by <u>September 16, 2022</u>, in compliance with the injunction issued herein, he will be found in contempt of Court and will face per diem sanctions of $1,000 per day until he complies with this Order.** Life Advance must file a notice with the Court by <u>**September 17, 2022**</u> regarding whether Mr. Walsh has complied with this Order by dismissing the state court action and the April 2022 federal proceeding. Additionally, even if Mr. Walsh complies with this Order by dismissing both actions, Life Advance may move for contempt sanctions if Mr. Walsh brings any claims in the future in violation of the injunction issued herein.

**D. Attorney Fees**

Finally, Life Advance requests that the Court award attorney fee sanctions of $6,744.98, which is the amount of fees and costs incurred by Life Advance as of June 30, 2022 (when the Motion for Order to Show Caused was filed) to try to obtain Mr. Walsh's voluntary cooperation to dismiss the state court action. *See* ECF No. 375-2, Declaration of Russell De Phillips, at ¶ 24. Life Advance also requests that the Court award all additional attorney fees and costs it has incurred in prosecuting the motion to conclusion since it was filed, and that the Court reinstate the sanctions the Court previously contemplated awarding against Mr. Walsh in connection with Mr. Walsh's filing of false statements with the Court. ECF No. 375 at 2.

> *i. Attorney fees incurred by Life Advance in connection with the present dispute*

Under the settlement agreement, if it becomes "necessary to commence an action to enforce the provisions of [the] Agreement," the prevailing party in any such litigation is entitled to "reasonable attorney's fees and costs" to be paid by the unsuccessful party. *See* ECF No. 375-3 at 10 ¶ 23. Here, Life Advance is the prevailing party on its motion to enforce the settlement agreement, which it was compelled to file due to Mr. Walsh's unreasonable refusal to dismiss the lawsuits against Life Advance that are clearly foreclosed by the settlement. Mr. Walsh is thus bound to pay Life Advance's reasonable attorney fees and costs that it has incurred in connection with seeking Mr. Walsh's

cooperation with the agreement and ultimately having to seek Court intervention to force such compliance.

Therefore, the Court will award Life Advance the attorney fees and costs that it has reasonably incurred in bringing (1) the Motion for Order to Show Cause (ECF No. 375) and (2) the Supplemental Declaration regarding the Motion for Order to Show Cause (ECF No 390), to include all time spent communicating with Mr. Walsh to try to obtain his voluntary dismissal of the lawsuits at issue, preparing and briefing the motion and supplemental declaration, and preparing for and attending the Show Cause Hearing, in addition to all costs reasonably incurred in connection therewith.

Counsel for Life Advance is accordingly **ORDERED** to file a Supplemental Fee Application no later than **September 6, 2022**, detailing all reasonable fees and costs incurred since June 30, 2022. In filing the supplemental fee application, counsel is reminded that the burden is on the party requesting attorney fees to establish the reasonableness of the hourly rate charged as well as the reasonableness of the hours expended. *See Computer Xpress, Inc. v. Jackson*, 113 Cal. Rptr. 2d 625, 649 (Ct. App. 2001) (explaining that the party seeking fees bears the burden "of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates"); *Roberts v. City & County of Honolulu*, 938 F.3d 1020, 1025 (9th Cir. 2019) ("It is the responsibility of the attorney seeking fees to submit evidence to support the requested hourly rate"). Thus, the supplemental application should address the reasonableness of counsel's hourly rate and the hours expended, rather than merely reporting them to the Court. Life Advance is also permitted to include in its fee application all hours expended on preparing the fee application itself.

> ii. *Reinstatement of previously contemplated sanctions award in connection with Mr. Walsh's prior breach of the settlement agreement*

On April 6, 2022, the Court issued an Order Regarding Sanctions, in which it addressed the propriety of sanctions against both Mr. Walsh and Mr. Nicholson in connection with Mr. Walsh's filing of false statements with the Court. *See* ECF No. 348.

3:18-cv-02280-DMS-AHG

There, the Court found that Mr. Walsh should face sanctions pursuant to Rule 11(b)(1), the Court's inherent powers, and the attorney fee provision of his settlement agreement with Life Advance, based on his filing of false statements with the Court and violation of the agreement. *Id.* at 33-34. However, the case settled among all remaining parties shortly after the Court issued that Order, and as part of the agreement, Life Advance agreed that it would no longer pursue the sanctions contemplated therein. The Court accordingly found the issue of sanctions to be mooted by the settlement, and vacated the deadline for Mr. Walsh and Mr. Nicholson to respond to Life Advance's supplemental declaration in which it detailed all costs and fees incurred in connection with the filing of the false statements with the Court. *See* ECF No. 353. The Court had not yet made a determination regarding the appropriate division of the fee-shifting sanctions between Mr. Walsh and Mr. Nicholson, nor had it completed a full lodestar analysis of the reasonableness of the fees requested by Life Advance.

Life Advance now asks that the Court reinstate the sanctions it contemplated awarding against Mr. Walsh in the April 6, 2022 Order Regarding Sanctions. Upon due consideration, the Court **DENIES** the request. Life Advance agreed to waive these sanctions as part of its subsequent settlement with Mr. Nicholson, Mr. Voelker, and CEDI. There is no need to reopen that issue.

## IV. CONCLUSION

The Ex Parte Motion filed by Life Advance, LLC for an Order to Show Cause Why John J. Walsh Should Not Be Enjoined and Sanctioned for Filing State Court Complaint in Violation of Settlement Agreement, for Injunctive Relief and Award of Attorney Fees (ECF No. 375) is **GRANTED in part** and **DENIED in part**.

Specifically, the Court **GRANTS** Life Advance's motion for injunctive relief. The Court will enter a separate order granting the following injunctive relief:

1.      Pursuant to Mr. Walsh's grant of consent to the undersigned Magistrate Judge to resolve all disputes related to the enforcement of his settlement agreement with Life Advance, the Court will enjoin John J. Walsh from maintaining (a) the state court action in

3:18-cv-02280-DMS-AHG

the Superior Court of California for the County of San Diego, Case No. 37-2022-00015515-CU-MC-CTL, and (b) the federal action he filed in this Court on April 6, 2022, captioned *Dr. John J. Walsh v. California Energy Development, et al.*, Case No. 3:22-cv-00449-JO-BGS (S.D. Cal.).

2.     The Court will further enjoin Mr. Walsh from bringing any future claims asserting any claim to the Policy proceeds at issue in this interpleader action or otherwise arising from the same transactional nucleus of facts giving rise to his claim to the Policy proceeds.

3.     The Court will further enjoin Mr. Walsh from bringing any future claims related to the interpretation or enforcement of his settlement agreement with Life Advance in any Court other than the Southern District of California or before any other judge other than the undersigned Magistrate Judge.[7]

Mr. Walsh is **ORDERED** to dismiss both actions forthwith. If he does not dismiss both actions by **September 16, 2022**, Mr. Walsh will be found in contempt of this Court Order and shall be fined $1,000 per day in civil contempt sanctions to coerce his compliance with this Order.

However, the Court lacks jurisdiction to enjoin Mr. Walsh from bringing claims against his former attorney, Elliott Kanter, in connection with Mr. Kanter's representation of Mr. Walsh in this action. Thus, although Mr. Walsh must dismiss both the state court action and the federal proceeding, if he wishes to file future claims against Mr. Kanter based on Mr. Kanter's representation of Mr. Walsh in this action, he may do so without

---

[7] If the undersigned is no longer a Magistrate Judge in this Court at the time any future dispute regarding the settlement agreement arises, the party seeking enforcement or interpretation of the settlement agreement may petition this Court for another judge in the Southern District of California to consider the dispute, pursuant to the express reservation of the Court's jurisdiction in the amended dismissal order.

mm

violating the Court's injunction.[8] The Court expresses no opinion on the validity or viability of such claims.

The Court further **GRANTS in part** and **DENIES in part** Life Advance's request for sanctions. Life Advance must file a supplemental fee application detailing all fees and costs it seeks in conjunction with this current effort to enforce the settlement and serve the fee application on Mr. Walsh by **September 6, 2022**. Mr. Walsh may file a response to the supplemental fee application by **September 13, 2022**. The Court will not revive any request by Life Advance for sanctions relating to its earlier efforts to enforce the settlement agreement or address Mr. Walsh's false statements to the Court.

Finally, the Clerk of Court is **DIRECTED** to mail a copy of this Order to John J. Walsh at:

**6027 Charae Street**
**San Diego, CA 92122**

**IT IS SO ORDERED.**

Dated: August 29, 2022

_____
Honorable Allison H. Goddard
United States Magistrate Judge

---

[8] Because the Court lacks jurisdiction to enjoin Mr. Walsh's claims against Mr. Kanter, the Court will not require Mr. Walsh to dismiss the pending actions with prejudice as requested by Life Advance. Nonetheless, Mr. Walsh shall be enjoined from filing any future actions seeking to relitigate the claims that have been resolved in the interpleader action or challenging the validity of his settlement agreement with Life Advance. Thus, with respect to those claims, the Court's injunction shall have the same operative effect as a dismissal with prejudice.